Staples, J.
delivered the opinion of the court.
This is a suit by a married woman to set aside a *577 deed of separation between her husband and herself. This deed bears date 20th July 1863. It recites, among other things, that irreconcilable differences had arisen betwen the parties, which rendered it impossisible for them to live together in mutual affection and harmony as man and wife, and they therefore proposed to live separate and apart by agreement, rather than seek relief by divorce at the hands of the court. Then follow certain covenants on the part of the husband, with the trustee mutually selected by the parties to act for the wife, by which the husband renounces all his marital rights, all control of his wife’s person, and all claim to her earnings.
The wife, on her part, surrenders every right she may have to the custody and control of the children, not only during the life of the husband, but after his death.
She then conveys two tracts of land, derived by descent from her father and mother, to the trustee, in trust, that he will permit, 33. M. Switzer, the husband, to occupy the same during his life, and at his death he will convey the same to the children of the marriage or the survivor of them.
In consideration of this conveyance, the husband covenants that he will annually deliver to the said trustee, for the benefit of Mrs. Switzer, thirty-five bushels of wheat, thirty bushels of corn, and two hundred and fifty pounds of pork, all of merchantable quality; he also sells to the trustee, for her benefit, a horse and buggy and harness, a cow, and certain articles of household and kitchen furniture of inconsiderable value. A lien is reserved to Mrs. Switzer upon the lands conveyed for the due performance of the covenants on the part of her husband. These are the *578 most material provisions contained in the deed of separation.
The only question we are to consider is, how far this dee(} is binding upon the wife’s estate of inheritance. In this state, agreements between husband and wife for separation have never been passed upon by any court of the last resort. The question is, therefore, res integra with us. In England the subject has received the fullest consideration. It is there held that deeds of separation, when properly framed, are valid, and will be enforced. The' courts will not enforce a contract between husband and wife to live apart; this they pronounce void upon grounds of public policy: but they hold that the deed is valid so far as relates to the trusts and covenants by which the husband makes a provision for the wife, and the indemnity given to the husband by the trustees for the wife. In Worrall v. Jacob, 8 Meriv. R. 255, 268, Sir William Grant said: “The object of the covenants between the husband and the trustee is to give efficacy to the agreement between the husband and the wife; and it does seem rather strange that the auxiliary agreement should be enforced, whilst the principal agreement is held to be contrary to the spirit and policy of the law.” And he expressed his entire concurrence with Lord Eldon, that “ if this were res integra, untouched by dictum or decision, he would not have permitted such a covenant to be the foundation of an action or suit.” But dicta has followed dicta, decision has followed decision, to the extent of settling the law on this point too firmly now to be disturbed.
In Warrender v. Warrender, 2 Clark & Fin. R. 488, 527, Lord Brougham, in discussing this question, said :
“ What is the legal value or force of this kind of agreement. Absolutely none whatever, in any court *579 whatever, for any purpose whatever, save and except only the obligation contracted by the husband with trustees, to pay certain sums to the wife. In no other point of view is any effect given by our jurisprudence, either at law or in equity, to such a contract.”
It will be found, upon examination of nearly all the English cases, that the proceedings were at the suit of the wife for a separate maintenance, agreed to be paid by the husband. True, there are decisions enforcing the wife’s covenant to pay the husband a sum of money upon an agreement for a separation. But in these cases the wife was possessed of a separate estate, as to which she is treated as a feme sole. Having the jus disponendi, she may, of course, alien or charge such separate estate, or enter into valid covenants with reference to it, unaffected by her general disability of coverture. Even here it is held, that if the agreement bears the least appearance of inequality or unfairness, the court will not assist either husband or wife in getting possession of the estate with a view to the execution of the agreement. Durand v. Durand, 2 Cox R. 207; Bright v. Chapman, 2 Anst. E. 345; Clancy on Married Women, 420; 2 Bright on Husband and Wife, 306; St. John v. St. John, 11 Ves. R. 526.
There is another class of cases in which the English courts have held the covenant valid for the benefit of the husband. Eor example, where the agreement is so framed as to be capable of being enforced against some third person acting as trustee for the wife, and agreeing to indemnify the husband against the debts of the latter. In these cases the claim of the husband is not asserted against the wife herself, but against the person who has contracted in her behalf.
The American courts have never gone as far as the English courts in sanctioning deeds of separation be *580 tween husband and wife. In many of them, perhaps in a large majority, it is held that a covenant by the husband for the benefit of the wife, through the intervention of trustees, upon a valid consideration, will be enforced. In 2 Story’s Eq. Jur. 1428, the doctrine is thus clearly expressed: “ In the first place, a deed of separation does not relieve the wife from any of the ordinary disabilities of coverture. In the next place, a deed of separation entered into by the husband and wife alone, without the intervention of trustees, is utterly void. In the next place, a deed for immediate separation, with the intervention of trustees, will not be enforced, so far as regards any covenant of separation, but only so far as maintenance is covenanted for by the husband, and the trustees covenant to exonerate him from any debts contracted therefor. See Walker v. Walker’s ex’or, 9 Wall. U. S. R. 748, 751; 1 Bishop on the Law of Marriage and Divorce, § 656; Tourney v. Sinclair, 2 How. R. (Missis.) 826.
The distinction between a covenant or conveyance by the husband, and covenant or conveyance on the part of the wife, rests upon very substantial grounds. The husband is sui juris; he may dispose of his estate as he pleases; he may settle it upon his wife; he may bind himself to allow her a separate maintenance. Whatever he might do, by way of making a settlement upon her if the parties were living together, he may, of course, do upon an agreement of separation. The wife on the other hand, as a general rule, can make no valid contract, especially with her husband: her legal existence is merged in him. The exceptions to this rule grew out of the possession of a separate estate by the wife, and do not affect the subject-matter here. The wife, of course, can make no valid agreement with her husband to live separate from him. *581 Such an agreement is utterly void. It will scarce be maintained that by entering into a void contract to live apart from her husband, she can thereby make valid a covenant which would be entirely nugatory in the absence of such contract.
But if it be conceded that a wife is competent to contract with her husband upon an agreement for a separation, it is very questionable, to say the least, whether in any view the one now being considered can be sustained. The effect of the deed is to relieve the husband from every obligation to support the wife, to exclude her from all claim upon him or his property, to vest in him during his lifetime, and in the children after his death, her entire estate, of the value of nearly twelve thousand dollars. The consideration she receives in return consists of a small quantity of personal property of but little value, perishable in its nature, or readily consumed in the use. She is also entitled to receive annually for her support a small quantity of grain and pork, which will not exceed eighty dollars in value. With this she is expected to go through life; to supply all her wants; raiment, food, a home, and whatever she may need.
It is very true that the husband is tenant by curtesy of the estate, and as such he is entitled to the rents and profits for life. But this right is accompanied with the corresponding obligation to support his wife. He cannot, by his marital right, take her estate and turn her out of doors, to subsist by her own exertions, or upon the charity of friends.
But although he is tenant by the curtesy, upon his death the estate reverts to her, with an unlimited power of disposition. By the deed she has executed here, after the death of the husband it devolves immediately upon the children. She has surrendered every *582 interest, present or future. It is difficult- to believe that any person of sound mind (especially one of the weaker sex) would have executed such a deed, except un(jer influences of a potential character, influences-which, if they did not destroy, must at least have affected that freedom of will so absolutely indispensable in every contract between husband and wife. This record furnishes abundant evidence that Mrs. Switzer consented to the arrangement only from a keen apprehension of the exposure and scandal of a suit for divorce. To escape this, she would have agreed to-anything her husband might have proposed in regard to her inheritance or to her future maintenance.
The learned judge of the Circuit court, who first, decided this case, has very properly said in this connection, “ that such an agreement cannot be sustained in any case in which it does not clearly appear that, in the negotiation which preceded the agreement, as well as at the time of executing the same, the wife was in a position in which she could act, and did act, not only with perfect freedom, but with knowledge and appreciation of all the circumstances of her situation and of' her individual and marital rights; and that the contract in itself must be fair and just, wholly free from exceptions, and such as a court of equity itself might have imposed upon the parties in a case in which their persons and their property had properly fallen under its jurisdiction and control. These conditions do not exist in the present case.”
The learned counsel for the appellant relies, however, upon the privy examination and acknowledgment of the -wife as excluding all these questions, and as effectual to pass her interest in the real estate conveyed in the deed. The statute prescribing the mode by which the interests of femes covert in real estate may be divested, *583 applies to conveyances executed by the husband and wife to third persons, and not to deeds executed by the wife to the husband, or for his benefit. It is the union of the husband and wife as grantor that makes the instrument operative. The deed here, being invalid for every purpose, the contract being void on the ground of the disability of coverture, and by reason of the want of freedom of will, as well as the inadequacy of consideration, can derive no validity from the privy examination and acknowledgment. The same principle applies to the children. The contract, being invalid as to the husband, is invalid as to them. They are affected by the channel through which they claim to hold. The disability, the constraint operating upon the wife, and the inadequacy of consideration, necessarily extend to them. The foundation being bad, the whole superstructure, the entire arrangement, must fall to the ground.
The learned counsel for the appellant, in his petition for an appeal, declares that the appellee appears as a convicted and divorced adulteress of the most profligate habits, seeking to recover the title to land which she had voluntarily and for good consideration united in settling on her innocent children, in order that she may acquire the right to squander it in vice, instead of leaving it to pass to these children as it had descended to her from her parents. All this may be true. But such considerations can have no effect upon the appellee’s legal incapacity, as a feme covert, to make a contract with her husband. The same principles of law must apply to her agreements as to those of the most virtuous female of the land. If she is incapable as a married woman to do an act, it does not matter what is her character or her conduct. If she has title to property, the courts cannot divest her of it, however *584 wasteful and lewd she may be, or however unfortunate may be the condition of her children.
It has been decided in some of the states, that in all cases 0f divorce a vinculo matrimonii, the interest of the husband in the wife’s lands at once ceases, and she is entitled to be placed in their immediate possession. In this state the whole subject would seem to be regulated by statute, which provides, that “ upon decreeing from the bonds of matrimony or from bed and board, the court may make such further decree as it shall deem expedient concerning the estate and maintenance of the parties or either of them, and the care, custody and maintenance of the minor children.” It seems that after this suit was brought by the wife, a bill was filed by the husband against her for a divorce from the bonds of matrimony, and a decree has been obtained accordingly. Whether under the statute just cited the court may make any order touching the lands in controversy, how far it may control the same, or dispose of the rents and profits, are questions which do not arise in this ease. The suggestions of the learned counsel, in regard to the habits and character of the appellee, would be perhaps more properly addressed to the court having charge of the divorce suit.
In this suit, the only matter we have to consider is the validity of the deed of separation, so far as the wife’s interests are affected. Upon the other branch of the question, whether such deeds and all the covenants therein are or are not invalid, even as regards the husband, upon grounds of public policy, no opinion is expressed. What view the Virginia courts may take of that question, must be a matter for future consideration.
Upon the whole, we are of opinion, there is no error in the decree of the Circuit court.
Decree aeeirmed.