# Richmond.

STROTHER'S ADM'R AND ALS. v. MITCHELL'S EX'OR AND ALS.

JANUARY 29th, 1885.

1. L E G A C I E S—*Advancements—Ademption.*—Where one *in loco parentis* gives a legacy as a portion, and *afterwards* advances in the nature of a portion to same person, such advancement will be deemed an ademption of the legacy. *Hansborough* v. *Hooe*, 12 Leigh, 322. But where the gift is given *before* the making of the will, and the will does not charge it as an advancement, the court cannot so charge it in settling the estate. Code 1873, chapter 118, section 12.

2. C o - S U R E T I E S—*Contribution.*—Where principal is insolvent, surety, against whom judgment has been rendered, may have judgment against ' his co-surety for his share of the debt. But unless such judgment has been rendered, such surety cannot have judgment against his co-surety. Code 1873, chapter 144, section 8.

3. EVIDENCE—*Post-Admissions of Assignor.*—A letter written by a distributee, after assigning his share of the estate, is not admissible as evidence for any purpose in suit to settle the estate.

4. DECREES—*Who bound by.*—One not a party to the suit is not bound by any proceedings or decrees therein.

Argued at Staunton, but decided at Richmond.

Appeal from two decrees of circuit court of Frederick county, rendered 17th May, 1884, and 12th June, 1884, respectively, in the chancery cause of Mary Mitchell's executor against J. T. Strother's administrator and others.

Mary W. Tuley held J. T. Mitchell's bond, dated 30th October, 1860, for $1,561.15. Mary Mitchell and J. T. Strother were sureties thereon. In 1866, after the death of the sureties,

judgment was had on the bond against J. T. Mitchell alone. Under Mary Mitchell's will, J. T. Mitchell, who was her son, was a legatee, and he assigned his interest in her estate to Mary Tuley to pay the bond. In 1879, in the circuit court of Clarke county, Xaupi, who was also a legatee, sued for a settlement of the estate. Mary Tuley was made a party, and received the amount of the bond out of J. T. Mitchell's interest. In 1882, in that suit, Master Moore filed a supplemental report, founded on a letter of J. T. Mitchell, dated 1880, which admitted he had received from his master before the making of her will an advancement, which, the master stated, satisfied his legacy, so that he had no interest in the estate when he made the assignment to Mary Tuley. In 1882 a decree was entered confirming the supplemental report. In 1883, in the circuit court of Frederick county, Mary Mitchell's executor sued the administrator, &c., of J. T. Strother, deceased, for contribution of one-half of the sum which had been paid out of her estate in satisfaction of said bond, and based the claim on the said report which had been confirmed as aforesaid, and on the theory that it had been so paid by reason of the said suretyship. The administrator of J. T. Strother answered alleging, among other things, that the bond had not been paid out of Mary Mitchell's estate, but out of J. T. Mitchell's interest in that estate; and that the said report, and the decree confirming it, were not binding upon his intestate's estate, because it was unrepresented in that suit, and also that the said letter was not admissible evidence to sustain the report.

But upon the hearing, the circuit court of Frederick county, on 12th June, 1884, decreed that, it appearing that the estate of Mary Mitchell had paid the whole of the said bond by reason of said suretyship, it was entitled to recover from the estate of J. T. Strother, upon the principle of contribution among co-sureties, one-half of the amount so paid by it, and ordered that Barton and Boyd, out of money in their hands belonging to the estate of Joseph T. Strother, pay to J. T. Thomas, the execu-

tor of Mary Mitchell, the sum of $60, with interest thereon from 15th December, 1879, and the further sum of $1,436.99, with interest thereon from 22nd January, 1882, and the costs of the suit—the balance so paid by Mary Mitchell's estate having been barred by the statute of limitations. From this decree J. T. Strother's administrator obtained an appeal to this court and a writ of *supersedeas*.

*T. W. Harrison*, for the appellants.

*M. McCormick*, for the appellees.

LACY, J., delivered the opinion of the court.

The appellee, Mary Mitchell's executor, filed his bill in October, 1883, alleging, that on the 30th day of October, 1860, Joseph T. Mitchell, as principal, and J. T. Strother and Mary Mitchell, as co-securities, had executed a bond for $1,561.15 to Mary W. Tuley, administratrix of Joseph Tuley, deceased; that the estate of Mary Mitchell, his testatrix, had been compelled to pay the whole debt, in a suit in the circuit court of Clarke county, in the name and style of *Xaupi* v. *Mitchell's ex'or;* that Joseph T. Mitchell, the principal, was a bankrupt, and that Mitchell's executor was entitled to have contribution of J. T. Strother's estate, as co-security, and to attach a fund under the control of the court. To this bill the administrator and the widow and children of J. T. Strother demurred and answered.

Passing by the questions raised by the demurrer, the answers denied the joint obligation of Strother and Mitchell—denied that Mary Mitchell's estate had paid the debt—that it was paid by the estate of Joseph T. Mitchell—and alleged that Mrs. Tuley was the assignee of the interests of Joseph T. Mitchell in the estate of his mother, Mrs. Mary Mitchell; that the record of the said suit of *Xaupi* v. *Mitchell's ex'or*, in the circuit court of Clarke county, exhibited in this suit, showed this; that the record of the said last-named suit showed, moreover, that J. T. Strother's administrator was not a party to that suit, and

that the defendants who were entitled to the estate of J. T. Strother, deceased, were not in any way concluded by the proceedings in that suit; that in 1866 the obligee in the Mitchell bond had recovered a judgment against Joseph T. Mitchell alone, and had not sued either Strother or Mrs. Mitchell; that the suit of *Xaupi* v. *Mitchell* was a suit for the settlement of the executorial accounts of the executor, and for division and distribution of the Mitchell estate; that in this suit Mrs. Tuley was brought in by an amended bill, and answered, claiming to subject the interest of Joseph T. Mitchell to the payment of his debt to her, and exhibited an assignment executed by Joseph T. Mitchell to her of his entire interest under his mother's will; that this claim of Mrs. Tuley, as assignee, was allowed, and the share due her assignor, Joseph T. Mitchell, paid to her; that the interest of Mrs. Tuley in the suit then ceased; and that afterwards a letter of Joseph T. Mitchell, written to his sister, the wife of the executor, in 1880, admitting an advancement of $3000 by his mother, the testatrix, which was to be a charge against him in the distribution of his mother's estate; that the accounts were then reformed, and it was ascertained that the said Joseph T. Mitchell would then have no interest in the estase, and the payments made to Mrs. Tuley, on account of the Jos. T. Mitchell debt, credited to the executor as payments on account of Mrs. Mitchell's estate as security on the Tuley bond, and then the residue divided among the persons entitled to the Mitchell estate other than Jos. T. Mitchell.

The circuit court held that the Xaupi suit showed that Mitchell's estate had paid the amount of the Tuley bond as surety, and that Strother's estate was bound as security to contribute one-half of this sum to the Mitchell estate, except as to sums barred by the statute of limitations, and decreed out of the money in the hands of the court in another suit, the payment to Mitchell's executor of the sum of $60 as of December 15th, 1879, and of $1,436.99 as of January 22nd, 1882, with interest,

by Barton & Boyd, out of the funds in their hands belonging to the estate of Joseph T. Strother, and retired the cause from the docket as an ended cause.

From this decree, which was entered June 12th, 1884, and the subsequent decree rendered in the cause on the 14th day of June, correcting a clerical error in the former decree, an appeal was allowed to this court.

It appears from the record of this cause that the estate of Joseph T. Strother was in no way represented n the Xaupi suit; that there was nothing in the proceedings in that suit, up to the payment of the Tuley debt, that indicated or suggested that Strother's estate was interested up to that time.

Mrs. Tuley had no interest in the question whether her debt was paid by Mrs. Mitchell as security, or paid by the executor out of the share of Joseph T. Mitchell; but Joseph T. Strother's administrator, and the widow and children of Joseph T. Strother, have a deep interest in that question, as abundantly appears by this suit; as in the one case there was no liability on them, whereas by the other solution a large and ruinous liability has been fixed upon them by the decree herein. The advancement was made, if actually made at all, before the will of Mrs. Mitchell was executed—there was no reference to the advancement made in the will—and an inspection of the will shows that a difference was made therein in favor of the other children. It was the privilege of Mrs. Mitchell to charge this advancement to her son in her will, if she chose to do so, but if she did not do so, and did not so intend to charge it, it is not in the power of any other person to do so. The larger provision in her will for others may have been her way of doing this. Our statute provides that "a provision for, or advancement to, any person shall be deemed a satisfaction in whole, or in part, of a devise or bequest to such person in a *previous* will," &c.

In the case of *Moore* v. *Hilton*, 12 Leigh 1, this court held that an advancement to a child made *subsequent* to a will is to

be taken as a satisfaction of a legacy to that child, *pro toto*, or *pro tanto*, according to its amount.

In the case of *Hansborough* v. *Hooc*, 12 Leigh, 322, the question arose under the will of a grandfather, where Judge Cabell held for the court that the rule is well settled that when a parent, or person *in loco parentis*, gives a legacy as a portion, and *afterwards*, upon any occasion calling for it, advances in the nature of a portion to that child, that will amount to an ademption of the gift by the will, and this court will presume he meant to satisfy the one by the other, citing Lord Eldon, in *Trimmer* v. *Bayne*, 7 Ves. 508, and *Jones* v. *Mason*, 5 Rand. 577, and this with reference to real estate as well as to personal estate.

This is well settled, and we do not mean to contradict the principle; it is a part of the statute law of the State.

But it nowhere appears when this sum of $3,000 was advanced, if at all. It is a most important question to the appellants, and they have a right to be heard to contest the question before their rights are passed upon. The will was executed in 1862. Strother's administrator claims that if any advancement was made to Joseph T. Mitchell at all, it must have been in the years 1860 or 1861. But upon this point no proof has been taken. The will was admitted to probate in 1865. Strother's administrator complains that there was no proof taken to prove the letter; that it was dated in 1880—long after—eighteen years after the date of the will, and fifteen years after the death of Mrs. Mitchell, and that it was dated long after the alleged writer, Joseph T. Mitchell, had assigned all his interest in the estate to his creditor, and long after he had been adjudged a bankrupt, and when he had no interest in the subject; that it must have been admitted by the commissioner, and acted on by the court, as an admission against interest, but that it cannot be so regarded; that it was not evidence for any purposes. And he further contends that the commissioner who so admitted it was the counsel in the cause, and drafted both the

Opinion.

original and amended bills; that it was of no concern to Joseph T. Mitchell, the supposed writer, and in the interest of the person who offered it, and in no way concerned Mrs. Tuley, the creditor, who had been paid her debt as the assignee of Mitchell, and gone out of the cause. Mrs. Tuley claimed to be paid this debt of Joseph T. Mitchell, in her answer as the assignee of the said Joseph T. Mitchell, and although she asserts another debt against Mrs. Mitchell, she does not hint in her answer that Mrs. Mitchell is bound to her as surety for this debt of her son, Joseph T. Mitchell.

After Mrs. Tuley had been paid her debt, as the assignee of Jos. T. Mitchell, in which capacity alone she claimed it, never having asserted any claim for it against Mrs. Mitchell in this or any other suit, so far as this record shows, and been paid another debt which she did claim against Mrs. Mitchell, the following appears in the record:

" COMMISSIONER'S OFFICE,
"*April* 11th, 1882.

" I have been *requested* to make the following supplemental statement, in addition to my report heretofore filed in this cause:

" A letter of Jos. T. Mitchell, addressed to Mrs. J. T. Thomas, I suppose, beginning 'Dear Belinda,' and concluding 'Your affectionate brother, Jos. T. Mitchell,' and dated December 3d, 1880, has been laid before me."

By whom! There is no sponsor for it in the record. In this letter *he* acknowledges the receipt by himself of $3,000 from Mrs. Mary Mitchell during her life, which sum he says she permitted him to keep on account of his interest in her estate.

Where is this letter? It is not in the record; there was no party to the cause who so required, and it is not exhibited with the report of the commissioner.

We do not intimate that there is no such letter. But has not

Strother's administrator a right at least to see it, and inspect it? It has proved fatal to all the interests of Strother's children.

The commissioner then adds: "In the report heretofore made by me he has not been charged with this sum. It should be charged against him as an advancement. I have no information as to the time of Mrs. Mitchell's death, but her will was admitted to probate on the 30th day of November, 1865. In the statement below I have charged interest on the sum of $3,000 from the 1st day of December, 1865."

This is all the commissioner says on this very important point; but it is quite enough to show that this letter was the sole ground for the change in the situation. It was not deemed necessary to prove its execution, nor was it considered necessary to ascertain with certainty to whom it was written or when delivered—the commissioner supposes that it was written to the wife of the executor, Mrs. Thomas. He does not pause long enough to tell us who presented the letter, or who requested him to make this new and supplemental report. Perhaps it did not and obviously it did not concern any party in that cause to inquire concerning these things. To them it was a matter of great gain to have it all so settled; but the effect, as we have seen, under the decision of this case in the circuit court, was to destroy the property rights of the appellants in this cause *without proof—without a hearing*, in a cause to which they were not invited nor admitted as parties, the circuit court holding that it appeared that the estate of Mrs. Mitchell had paid the whole of this debt for which the said Mary Mitchell and J. T. Strother were co-securities, and Mary Mitchell's estate was entitled to contribution therefor from Strother's estate.

Our statute provides that if the principal debtor be insolvent, any surety, or his personal representative, against whom a judgment or decree has been rendered on the contract for which he was surety, may obtain a judgment or decree by motion in the court in which the former judgment or decree was

rendered, against any co-surety, or his personal representative, for his share in law or in equity, of the amount for which the first-mentioned judgment or decree may have been rendered; and if the same has been paid, for such share of the amount so paid, with interest thereon from the time of such payment.

Was any judgment or decree rendered against the estate of Mrs. Mary Mitchell for this debt of Joseph T. Mitchell? If so, in whose favor was it rendered, when so rendered against Mary Mitchell's estate? It was not so rendered in favor of Mrs. Tuley, for her debt was paid her as against the interest of Jos. T. Mitchell, claiming under his interest in, not against Mrs. Mitchell's estate, but after there was no longer any claimant in this case of the Tuley debt, it having been paid, the accounts were rearranged among the parties claiming under the will—a matter to which no party in that case could offer any objection.

Judge Lee, delivering the unanimous opinion of this court, in the cases of *Tarr* v. *Ravenscroft*, and *Tarr* v. *Hendricks*, 12 Gratt. 642, says: "The doctrine of contribution among sureties is founded rather on principles of equity and natural justice than upon any notion of mutual contract, express or implied." Citing *Dering* v. *Earl of Winchelsea*, 1 Cox R. 318.; *Craythorne* v. *Swinburne*, 14 Ves. R. 160; and Lord Redesdale in *Stirling* v. *Forrester*, 3 Bright's R. 575, 590. See also *Knight* v. *Hughes*, 3 Car. & Payne 467, *Swain* v. *Wall*, 1 Ch. Rep. 80; 1 Story's Equity Jur. § 499; Theobald on Prin. and Sur. ch. 11, § 283, p. 267.

The object of the whole doctrine is equity, and equality of burdens is equity. See also *Blow* v. *Maynard*, 2 Leigh, 29. The question whether this burden should fall on Mrs. Mitchell's estate has, it seems, never been really litigated in any case, and if it had been in the case of *Xaupi* v. *Mitchell's ex'or*, it could not be held conclusive of the rights of Strother's estate not before the court, and not in any degree represented in that case.

It follows that the decrees complained of must be reversed and annulled, and the cause remanded, to allow Strother's administrator and the other appellants a day in court to litigate this to them very important question.

DECREES REVERSED.