# CHARLESTON.

Robert L. Neil v. Flynn Lumber Co. *et als.*

Submitted February 26, 1918.    Decided March 12, 1918.

1. Descent and Distribution—*Advancement—Presumption.*

Where a conveyance is made without consideration, or for a mere nominal consideration, by a father to one of his children, the same is *prima facie* an advancement; but this presumption may be overcome by proof of the declarations of the grantor and the attendant circumstances showing a contrary purpose. (p. 26).

2. Same—*Right to Distribution—Advancement.*

Where a child has received a certain portion in full of his share of his father's estate, on the death of his father, he, his children, and their grantee, are ordinarily barred from further participation in the distribution or partition of the residue of the estate. (p. 26).

3. Same—*Advancement—Effect—Intent—Proof.*

Whether an advancement made to a child by a father is a bar to his further participation in the distribution or partition of the residue of the estate depends upon the intent and purpose of the father in making it and the child in receiving it; and where such purpose and intent does not appear from any writing executed by the parties, or either of them, the same may be deduced from the prior, contemporaneous or subsequent declarations and statements of the parties, their subsequent conduct in relation to the property, as well as an evident purpose or design on the part of the grantor to provide for his children by the distribution of his estate among them before his death. (p. 29).

4. Same—*Intent—Evidence.*

The fact that a child who has received an advancement from his father, with full knowledge of his father's death and of the estate left by him, makes no claim to be entitled to further participate in the distribution or partition of the residue of the estate for more than twenty years is a circumstance to be considered in determining whether the advancement was received by him in relinquishment of his further right to participate in the estate. (p. 29).

Appeal from Circuit Court, Nicholas County.

Suit for partition by Robert L. Neil against the Flynn Lumber Company and others. Decree for defendants, and plaintiff appeals.              *Affirmed.*

*G. G. Duff* and *Blue & McCabe,* for appellant.

*Alderson & Breckenridge,* for appellee Flynn Lumber Co.

*Brown & Eddy,* for appellees, Julia Simms and others.

*C. W. Bell,* for appellee R. G. Neil.

RITZ, JUDGE:

Robert Neil died in the year 1888 leaving surviving him Alexander Middleton Neil, Nathan W. Neil, William Henry Harrison Neil and Robert Grimes Neil, children by his first wife, and Joseph F. Van Pelt Neil, Julia C. Simms and Margaret J. Shelton, children by his second wife. At the time of his death he was the owner of a tract of land in Nicholas county containing about five hundred acres, the same being a part of a larger tract of about nine hundred acres devised to him by his father. Shortly after his death the three children by his last wife entered into an agreement to divide the land among themselves, pursuant to which it was divided by commissioners, and a part laid off to each of said three children. Subsequently, and after the death of Joseph F. VanPelt Neil, it was discovered that an error had been made in partitioning the land among the three children, and to correct this a suit in equity was instituted for the purpose of having a repartition of the land, such a suit being rendered necessary because of the fact that the heirs of Joseph F. VanPelt Neil were infants and could not make and sign an agreement as to the partition. This suit resulted in a division of the land in April, 1897, by commissioners appointed by the court. After the death of his father Robert Neil, to-wit, in the year 1896, Alexander Middleton Neil departed this life leaving surviving him a widow and six children. In the year 1914 the widow and all the children of Alexander Middleton Neil united in a deed conveying all of their interest in the estate of the said Robert Neil to the plaintiff Robert L. Neil, and this suit was thereupon instituted for the purpose of having partition of the tract of land, the title to which was in Robert Neil at the time of his death in 1888. Neither Alexander Middleton Neil nor his children were parties to the partition suit in which this land was divided among the three children of the second

wife of Robert Neil. In defense to the bill it is insisted that Alexander Middleton Neil received in his lifetime an advancement from his father in satisfaction of his prospective interest in the estate.

Sometime prior to the beginning of the Civil War Alexander Middleton Neil, being the eldest child of his father Robert Neil, was married in Nicholas county. About the same time his brother Nathan W. Neil was also married. At that time it is shown that their father Robert Neil laid off to each of them a parcel of land from the boundary then owned by him. These tracts of land were contiguous to each other, and contained in the aggregate about one hundred and fifty acres. It does not appear how many acres were in each of the tracts. Upon the respective tracts laid off to them each of the sons constructed a house and moved into the same with his family. In the year 1862 the older son moved to the west and lived there until the time of his death in the fall of 1896. However, in the year 1866 he returned to his old home in Nicholas county apparently for the purpose of disposing of the land which had been given to him by his father, but for which he had never received a conveyance. While in Nicholas county he sold this land to his brother Nathan W. Neil for the sum of four hundred dollars, and at that time his father conveyed to Nathan W. Neil by one deed a boundary of land which included what had theretofore been assigned by him to both of the sons. Part of the money with which this land was purchased by Nathan W. Neil from his older brother was loaned to him by his father, and the residue, it appears, was subsequently paid when the wife of Alexander Middleton Neil was in Nicholas county on a visit. It is not recited in the deed from Robert Neil that the land conveyed thereby to Nathan W. Neil is to be taken as an advancement made to the two sons, Alexander Middleton Neil and Nathan W. Neil, nor does the deed show on its face that any of the land therein conveyed was the part assigned to Alexander Middleton Neil. This fact, however, conclusively appears from the evidence. Subsequently Robert Neil conveyed another tract off his holdings to his son Robert Grimes Neil which contained about forty-five acres, but upon which there was a mill, and still

another tract to his son William Henry Harrison Neil, containing a very much larger amount. The deed to William Henry Harrison Neil specifies that it is conveyed in discharge of any interest that William Henry Harrison Neil might thereafter have in the estate of the said Robert Neil; and the deed to Robert Grimes Neil, as the same is recorded, has an addenda in the way of a receipt, signed by the said Robert Grimes Neil, that the same is accepted in satisfaction of any interest that might come to him from his father's estate. In this way it is contended that the four older children, being the descendants of Robert Neil and his first wife, were provided for from their father's estate prior to his death; that these advancements were made to them and were accepted by them in full satisfaction of any interest they might otherwise thereafter be entitled to as heirs-at-law of said Robert Neil. This was the assumption upon which the three younger children, descendants of the said Robert Neil and his second wife, proceeded when they partitioned the land among themselves. It may be said that it is also shown that a short time before his death Robert Neil advised his younger children that if they would agree upon the division of the remaining land among them, he would make them deeds therefor. That the four children of Robert Neil by his first wife received advancements from their father's estate cannot be questioned. And the advancements made to William Henry Harrison Neil and Nathan W. Neil are admitted by them and their heirs to have been in full satisfaction of their prospective interests in their father's estate. Robert Grimes Neil, however, contends that the conveyance received by him was not an advancement at all, but was purely a gift, or a purchase, rather, by him from his father, for the recited consideration of five dollars, as shown by the deed. And the heirs-at-law of Alexander Middleton Neil now contend that no advancement was ever made to their father, and that neither he nor they have ever received anything from the estate of their grandfather Robert Neil, their contention being that the land conveyed to Nathan W. Neil was only the share to which he was entitled, and not the share of himself and his brother. It is shown without dispute that Robert Neil did assign and set off to his son Alex-

ander Middleton Neil before the Civil War a tract of land which is included in the deed to Nathan W. Neil with the land set off to him. It further appears without contradiction that Alexander Middleton Neil constructed a house thereon and lived in this house for a short time after his marriage, and it is shown indisputably that after he moved to the west he returned to Nicholas county in 1866 and sold this tract of land to his brother Nathan for the sum of four hundred dollars. These facts clearly appear from the testimony of the witnesses G. R. Johnson and John M. Cavendish. It also appears from the testimony of these witnesses that the land thus assigned to Alexander Middleton Neil by his father was included in the conveyance made to Nathan W. Neil, and that it was so included to effectuate the sale made by Alexander Middleton Neil to his brother Nathan. Presumptively this transaction created an advancement by the father to the son. 1 R. C. L. p. 652; *Roberts* v. *Coleman*, 37 W. Va. 143; *Coffman* v. *Coffman*, 41 W. Va. 8; *McClanahan* v. *McClanahan*, 36 W. Va. 34; *Jacques* v. *Swasey*, (Mass.) 12 L. R. A. 566; *Headrick* v. *McDowell*, (Va.) 65 L. R. A. 578; *Ireland* v. *Dyer*, 133 Ga. 851, 26 L. R. A. (N. S.) 1050. It appears from the authorities above cited that where a father, as in this case, gives to one or more of his children parts of his estate, without any consideration for such gift, the presumption is that he intended the same to be an advancement, and to be accounted for by the donee in the subsequent distribution of the estate. This presumption, however, is only indulged where there is no evidence of the real intention of the parties. If it can be ascertained from the contract made, or from the conduct of the parties and their subsequent dealings with the estate, that it was intended as a gift by the ancestor, it will be given that effect. The intention of the donor in such case has to be gathered from his conduct, as well as from the conduct of the donee, their subsequent dealings with the property, the statements and declarations of the parties made at the time, or near the time, in relation thereto. It may be said in this case that it is clear from the declarations made by Robert Neil in regard to this transaction, as well as from the subsequent conduct of the parties in their treatment of this land, that the

parcel assigned to the son Alexander Middleton Neil was intended as an advancement, and was accepted by him as such.

The only question remaining for consideration is, was it intended to be a bar to his further participation in the estate of his father, or was it simply intended that he should account for the same in the subsequent distribution of his father's estate? There is no writing between the parties expressing their intent in this regard, and we must draw our conclusions as to what their intentions were from the declarations of the donor, his course of conduct in the division of his estate amongst his children, the actions of the parties in regard to the land, and all the other circumstances accompanying the transaction, and attending the subsequent relations of the parties to each other. Here we find it clearly shown that Robert Neil had adopted a general policy toward his children of dividing his estate among them prior to his death, and this, it may be said, is a circumstance to be considered in determining the effect to be given to the advancement made. *Brook* v. *Latimer*, (Kan.) 11 L. R. A. 805. We find that to each of his children by his first wife he had made advancements in land, and we find that he had advised his three younger children, his descendants by his second wife, that if they would agree upon the division of the remaining land he would convey it to them.. This policy of distributing his estate before his death is, we think, a strong circumstance indicative of the effect intended by Robert Neil to be given to the advancement made to Alexander Middleton Neil. It is argued that the amounts received by some of the older children were not as adequate provision as was made for the younger children by the partition made by them. This does not appear to be the case. While the younger children received larger allotments of land, it does not appear whether or not they are more valuable, or less valuable, than those parcels assigned to the older children; but assuming such to be the case it may well be said that a prospective heir would be willing to take a very much less sum thirty years before the death of his ancestor than might be his due if he waited for such event. Not only would he have the use of the property during all of that time, but he would avoid the chance that his father before his

death might dispose of all of his estate and die, leaving nothing for distribution among his children.  It will therefore be seen that the argument that the advancement received was not of the full value of the share which would have been received by such child had he awaited the death of his father has little weight.  The testimony of the two witnesses above referred to also prove the declarations of Robert Neil, indicating his clear intention that these advancements made to his children were made by him and were accepted by them in full satisfaction of any interest they might thereafter acquire in his estate, and if such was the case such children as received the advancements, or their descendants, are estopped now to claim a distributive share in the estate of their ancestor.  But the most potent circumstance indicative of this fact is that Alexander Middleton Neil, with full information of his father's death, and with full information of the estate left by his father, made no claim to any part thereof during his lifetime, notwithstanding he survived his father more than eight years, and his children, all of whom were adults at the time of the death of their father, and his widow who is still living, and who was fully advised of the real estate possessed by Robert Neil during all of the years from the death of Alexander Middleton Neil in 1896 down to 1914, never made any claim to any interest in his estate.  It is entirely inconsistent with the claim they now make, and taken together with the declarations proved to have been made by Robert Neil in his lifetime as to his purpose, and as to the effect to be given to such advancements, and the general policy adopted by him of providing for his children during his lifetime, we think very satisfactorily shows that the advancement made to Alexander Middleton Neil was given in full for his prospective interest in his father's estate, and was accepted by him upon that condition.  Such being the case, neither his children, nor their grantee, can now claim any interest in the land left by their ancestor Robert Neil.  By the acceptance of the advancement by their father upon the conditions shown to have existed, they are estopped from asserting any such claim.

What we have said in regard to the claim of the heirs of Alexander Middleton Neil applies with full force to the claim

now made by Robert Grimes Neil. It is shown that he lived right in the neighborhood, and was fully informed of the partition of this estate by the three younger children at the time it was made more than twenty years ago; that he made no claim to said land nor to any part thereof at that time, nor at any time prior to the institution of this suit. His conduct in failing to assert his claim with full knowledge of the contention of his half brother and sisters is entirely inconsistent with the claim he now makes that the land conveyed to him by his father was not an advancement, but was in consideration of the nominal sum of five dollars expressed in the deed. There is, as before stated, appended to the deed as it is recorded in the county clerk's office the following stipulation: "I do hereby agree to take the within described tract of land as my portion of the estate of my father Robert Neil. Given under hand and seal this 3 day of August 1870. Robert G. Neil." It is argued that this statement is no part of the deed and should not have been recorded. This may be true, but it is recorded, and it is a strong circumstance tending to show that it was appended to the original deed, and that there was such an agreement in writing between Robert Grimes Neil and his father upon the acceptance of such deed by him, and when we consider that he does not go upon the witness stand and explain it in any way, does not produce the original deed to show that this matter was not appended thereto, we think this is a circumstance worthy of consideration in determining upon what conditions the land was accepted by him. Upon the whole case we are clearly of the opinion that the advancements made to each of the children of Robert Neil by his first wife were accepted in satisfaction of their respective interests in their father's estate, and are effective to estop them or their descendants from claiming an interest therein.

The decree of the circuit court complained of is therefore affirmed.

*Affirmed.*