In Re Estate of John W. Groves, *Admr.*

(No. 8634)

Submitted May 10, 1938.   Decided June 28, 1938.

W. G. *Brown* and *John T. Simms,* for the plaintiffs in error.

*Mahan, Bacon & White,* for defendant in error.

FOX, JUDGE:

This is a writ of error to an order of the circuit court of Nicholas County, entered in a statutory proceeding involving the settlement of the estate of Washington Groves, deceased, and the accounts of John W. Groves, his administrator. This settlement was first laid before a commissioner of accounts who filed a report which was confirmed by the county court, and a writ of error prosecuted thereto to the circuit court. The order of the county court was confirmed with minor modification, from which action this writ is prosecuted.

Washington Groves died on March 16, 1914, and shortly thereafter, John W. Groves qualified as administrator of his personal estate, the appraised value of which was $31,232.58, including $1,914.71, represented as doubtful of collection. He left surviving him two legitimate sons, John W. Groves and Rufus Groves, and three daughters, Margaret McClung, Nannie J. Monroe and Ruth Dorsey. Another son, Fielding Groves, left the county of his nativity, has not been heard from, and, in this proceeding, is presumed to be dead. He also left surviving him a natural son, Alfred Groves, who about eight months after his father's death and after the qualification of John W. Groves as administrator, instituted a suit in equity in the circuit court of Nicholas County, process in which was made returnable to November Rules, 1914, to establish an alleged will of Washington Groves, under which, as alleged in his bill and afterwards

decreed by the court, the said Alfred Groves shared in the estate of Washington Groves equally with his legitimate living children named above, under the residuary clause of the will. The suit to establish the will was not decided until May 20, 1930. This will, as established by the court, was executed about 1907 or 1908 and bequeathed and devised the property of the testator as follows: (1) After payment of debts and funeral expenses, he bequeathed to each of his three daughters the sum of $2,000.00; (2) to each of his grandchildren the sum of $100.00; (3) the residue of his estate, real and personal, was devised and bequeathed in equal amounts to his three sons, John W. Groves, Rufus Groves and Alfred Groves, and to his three daughters, Margaret McClung, Nannie J. Monroe and Ruth Dorsey.

In the year 1887 Washington Groves, for a nominal consideration, conveyed to John W. Groves a tract of 433 acres of land, and to Rufus Groves, 450 acres, out of his landed estate in Nicholas County; some time later, the exact time being uncertain, he gave to each of his three daughters the sum of $1,000.00. Some eighteen years thereafter, land values in that section having greatly increased, John W. Groves and Rufus Groves each sold the lands so conveyed to them, or portions thereof, from which they each realized approximately $7,000.00. In 1903 Washington Groves made sale of practically all of his land from which he realized $16,-236.00. In 1911, some three or four years after the execution of the will by which he bequeathed to each of his daughters $2,000.00, he made to each of them a gift of $2,000.00. About the time he gave this money to his daughters, he stated, according to the testimony of John W. Groves, that "he was going to give the girls $2,000.00 to make them equal or partly equal with what he gave Rufus and me"; and Alfred Groves, when asked about these payments, says that a short time before his father's death, he told him "he was going to give them some" and "he was going to give the girls $2,000.00 apiece"; and "he said I am going to give the girls $2,000.00." The

date of the statement to John W. Groves is definite, but that of Alfred Groves is not, except that he says it was "not so very long" before his father's death.

John W. Groves, as administrator, proceeded to administer his father's estate and distribute the same among his legitimate heirs. On August 3, 1914, he paid to Rufus Groves the sum of $775.37 and on September 8, 1914, the further sum of $4,000.00; on or about September 11, 1914, he paid to Nannie J. Monroe $2,853.13; on November 6, 1914, he paid to Margaret McClung $3,-000.00; and to Ruth Dorsey, $3,000.00, and to Nannie J. Monroe, $1,000.00. At some time later he withdrew from the estate $3,500.00, as a part of his share therein. Some small bills were paid, taxes met from year to year, including a settlement with the State Tax Commissioner, but nothing of note was done with respect to the estate until late in the year 1923 or early in the year 1924. At that time the undistributed part of the estate in the hands of the administrator was approximaely $7,000.00, deposited in banks in Nicholas County, and earning interest at the rate of four per cent annually. On December 1, 1923, John W. Groves withdrew this fund from the banks, and in his own name purchased bonds of the Washington Heights Land Company. The total face value of these bonds so purchased by him was $23,000.00, so that he used $16,000.00 of his own funds in addition to those of the Washington Groves estate. The record discloses little as to the real value of these bonds. The most that is shown appears from the affidavit of an auditor of the land company, from which it appears that the total investment of the company in land was $75,000.00; road construction, $35,128.93; engineering, $5,525.00; presumably a water tank, $15,723.06; lights, $10,932.73; house, $15,367.97; and road building equipment, $17,-753.62, a total investment of $175,431.31, on which there were outstanding first mortgage bonds to the amount of $175,600.00, a part of which were purchased by John W. Groves. Within two years after their purchase, the Washington Heights Land Company was liquidated, its

property sold to the Charleston Heights Land Company under an arrangement of some character by which the holders of the bonds of the liquidated company acquired a corresponding amount of stock in the new company upon the payment of an assessment of ten per cent of the face value of the bonds. John W. Groves paid this assessment and now holds in his own name 230 shares of the stock of the Charleston Heights Land Company of the par value of $23,000.00.

The commissioner of accounts held (1) that the use by the administrator of the estate's funds, in the amount of $7,000.00, in the purchase in his own name of bonds of the Washington Heights Land Company was not warranted in law and that he should be held accountable therefor; (2) that the payment by Washington Groves to each of his daughters of the sum of $2,000.00 in the year 1911 operated as payment and satisfaction of the bequests to them of that amount in the will executed by him prior to that date; (3) that the provisions made in the will for his grandchildren did not include the children of his natural son, Alfred Groves; (4) that the administrator should be charged with interest on funds of the estate actually collected by him to December 1, 1923, which he found to be $3,926.87, but that he should not be charged with interest on the estate from that date to May 20, 1930, when the final decree in the suit to establish the will was entered; (5) that the amount of the estate for which the administrator was accountable as of the year 1914, was $28,863.29, and that after the payment of expense of administration, and the bequests to the grandchildren, excluding the five children of Alfred Groves, the net amount of the estate distributable under the residuary clause of the will was $24,211.86, which, divided among those taking under that clause, amounted to $4,035.31 for each of them, to which was added $354.88 to each of said devisees on account of earnings of the estate, less expenses of administration, subsequent to 1914, and to January 1, 1935, the date to which all calculations in said report are made; (6) that

payments had been made by the administrator on account of their respective interests in the estate as follows: Rufus Groves, $4,775.37; John W. Groves, $3,500.00; Nannie J. Monroe, $3,853.13; Margaret McClung, $3,-000.00; and Ruth Dorsey, $3,000.00, and that nothing had been paid to Alfred Groves or his children; nor to the other grandchildren provided for in the will; (7) that $300.00 be paid to W. G. Brown, attorney for the administrator, on his claim of $500.00 for professional services; and (8) the various findings as to the payment of taxes and other expenses in connection with the administration of the estate. Based on these findings, the commissioner ascertained the amount due each of the grandchildren of Washington Groves, twenty in number, but excluding the children of Alfred Groves, at $161.82, and the amount due John W. Groves, $1,038.38, Alfred Groves $5,507.30, Nannie J. Monroe, $587.48, Margaret McClung, $1,676.80, and Ruth Dorsey, $1,-676.80 under the will, and that Rufus Groves had been overpaid by the administrator to the extent of $590.05, all ascertained as of January 1, 1935.

Exceptions were filed to this report by the respective interests affected, and the case was heard by the county court and the report confirmed. A writ of error was prosecuted in the circuit court, and the action of the county court approved, with the exception that the allowance to the attorney for the administrator was increased to $500.00, the full amount of his claim.

It will appear that, aside from the detail matters of accounting the more important questions presented may be considered under the following groups: (1) Whether the payments made by the testator to his three daughters in 1911 operated as payment and satisfaction of the legacies bequeathed to them in the will executed prior thereto; (2) whether, under the provisions of the will, the children of the natural son, Alfred Groves, were entitled to participate in the estate along with the children of the legitimate sons and daughters; (3) whether the use of $7,000.00 of the funds of the estate in the pur-

chase of the bonds of the Washington Heights Land Company should be held to be a legal investment for the estate; (4) the amount of interest on estate funds for which the administrator should be held accountable. These questions will be considered in the order stated. Other and less important questions will be later discussed.

1. Code 1923, Chapter 77, Section 11, Code 1931, 41-3-2, provides:

> "A provision for or advancement to any person shall be deemed a satisfaction in whole or in part of a devise or bequest to such person, contained in a previous will, if it would be so deemed in case the devisee or legatee were the child of the testator; and whether he be a child or not, it shall be so deemed in all cases in which it shall appear from parol or other evidence to have been so intended."

The language, "if it would be so deemed in case the devisee or legatee were the child of the testator", calls for a consideration of the rule governing advancements as the same has been applied in Virginia and this state. The rule is that where, without pecuniary consideration or for a nominal consideration for the purpose of advancing his child in life, a parent grants or transfers to him property, real or personal, it is *prima facie* an advancement. *Gregory* v. *Winston's Admr.*, 23 Gratt. 102, 64 Va. 102; *Watkins* v. *Young*, 31 Gratt. 84, 72 Va. 84; *Bruce* v. *Slemp*, 82 Va. 352, 4 S. E. 692; *McDearman* v. *Hodnett*, 83 Va. 281, 2 S. E. 643; *Clary* v. *Spain*, 119 Va. 58, 89 S. E. 130; *Payne* v. *Payne*, 128 Va. 33, 104 S. E. 712; *Poff* v. *Poff*, 128 Va. 62, 104 S. E. 719; *Johnson* v. *Mundy*, 123 Va. 730, 97 S. E. 564; *Trotman* v. *Trotman*, 148 Va. 860, 139 S. E. 490; *Osborne* v. *Richmond*, 131 Va. 261, 108 S. E. 560; *Rowe* v. *Rowe*, 144 Va. 816, 130 S. E. 771; *Kyle* v. *Conrad*, 25 W. Va. 760; *McClanahan* v. *McClanahan*, 36 W. Va. 34, 14 S. E. 419; *White* v. *White*, 64 W. Va. 30, 60 S. E. 885; *Neil* v. *Flynn Lumber Co.*, 82 W. Va. 24, 95 S. E. 523. Tested by this rule, we are of the opinion that the payments made by Washington

Groves to his three daughters were advancements. We find support for this view from the established facts connected with the gifts or advancements made by Washington Groves to his children before his death. In 1887, he conveyed to two of his sons large tracts of land; near the same time or later, he gave to each of his three daughters $1,000.00; some years later the lands conveyed to his sons increasing in value, he gave to each of his daughters $2,000.00, for the purpose, as stated by John W. Groves, "to make them equal or partly equal with what he gave Rufus and me." This statement was admissible, being against interest. *Crothers' Admr.* v. *Crothers,* 40 W. Va. 169, 20 S. E. 927; *Bailey* v. *Bee,* 73 W. Va. 286, 80 S. E. 454. Accepted as true, it leads us to the conclusion that when these payments were made in 1911, they were made with the idea in mind of equalizing, to some degree at least, the advancements he was making to his children. On this situation alone, we would hold that the payments made to the daughters in 1911 were in payment and satisfaction of the bequests made in the will executed prior to that date, under the statutory provision quoted above. However, another element enters into the question. Alfred Groves states that a short time before the death of Washington Groves in May, 1914, he told him that "he was going to give the girls $2,000.00 apiece" and "he said I am going to give the girls $2,000.00." The exact date of this conversation is not fixed, but it must have been after the date of the payments made to his daughters in 1911. If, after these payments were made, the testator still had the intention to give his daughters $2,000.00, it negatives the idea that the payments made were intended to satisfy the bequests in the will. *Hansbrough's Exrs.* v. *Hooe,* 12 Leigh 316, 39 Va. 316, 37 Am. Dec. 659 and *Strother's Admr.* v. *Mitchell's Exr.,* 80 Va. 149, are authority for the proposition that payments such as were made in the case at bar amounted to an ademption of the legacies; but *Jones* v. *Mason,* 5 Rand. 577, 26 Va. 577, 16 Am. Dec. 761, says that the presumption of an ademption may be rebutted

by evidence. See also *McClanahan* v. *McClanahan, supra; Neil* v. *Flynn Lumber Co., supra; Watkins* v. *Young, supra; McDarman* v. *Hodnett, supra; Clary* v. *Spain, supra; Poff* v. *Poff, supra; Rowe* v. *Rowe, supra; Trotman* v. *Trotman, supra.* Our statute seems to leave open the way for the introduction of evidence to reach the intent of the testator as to certain phases, and does not, we think, preclude resort to evidence to show his intent with respect to his children. The testimony of Alfred Groves is, likewise, against interest, and for that reason, if for no other, is entitled to belief. Accepting his statement as true, it shows the intent of the testator to give to each of his daughters $2,000.00 at a time subsequent to the payments made by him to them in 1911, and that intent can only be carried out by giving effect to the bequests to the daughters contained in the will. The giving effect to the bequest to the daughters works no injustice as between the legitimate children of Washington Groves. From the lands conveyed to the sons in 1887, they each realized approximately $7,000.00 from sales thereof; the total of the advancements and bequests to each of the daughters is $5,000.00. The suggestion that the increased value of the lands conveyed to the sons was due to their labor and exertion thereon in the way of improvements requires of the court that it close its eyes to the industrial development in that section of the state between 1887, when these lands were conveyed to them, and 1906, when they made sale thereof. On the whole, we are of the opinion that the legacies to the three daughters were not adeemed by the payments made in 1911.

This being our conclusion, the question arises whether it shall inure to the benefit of Nannie J. Monroe and Margaret McClung, who did not join the application for the writ of error to the judgment of the trial court. Ruth Dorsey did join in such application, and as to her, the question does not arise. The leading case on this question is that of *Walker's Exr.* v. *Page,* 21 Gratt. 636, 62 Va. 636, in which the rule is stated to be:

"Where the parties appealing and the parties not appealing stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, the Court of Appeals will consider the whole case, and settle the rights of the parties not appealing as well as those who bring their case up by appeal."

This rule has been followed in *Vance Shoe Company* v. *Haught*, 41 W. Va. 272-282, 23 S. E. 553; *Bowlby* v. *DeWitt*, 47 W. Va. 323, 34 S. E. 919; *Ward* v. *Brown*, 53 W. Va. 227, 44 S. E. 488; *Buskirk* v. *Musick*, 100 W. Va. 247, 130 S. E. 435; *Saunders* v. *Griggs*, 81 Va. 506; *Roanoke* v. *Blair*, 107 Va. 639, 60 S. E. 75. We conclude, therefore, that inasmuch as in this case the interests of the three daughters were identical, equally affected by the judgment complained of, and the questions involved the same, they should each share alike in the benefits resulting to them from our decision.

2. While it is true that the use of the word "children" or "grandchildren" is, in the absence of controlling words to the contrary, interpreted as having reference to legitimate children and grandchildren, their use must be given such interpretation as the facts of the case warrant. Here we are dealing with a will, and the intent of the testator is the polar star. Technical language and interpretation do not control. In this will, he names Alfred Groves as his son, and gives him an equal share in the residue of his estate after the payment of debts and specific legacies. In the same will, he bequeaths to each of his grandchildren $100.00. To say that the children of Alfred Groves, recognized in the will as his son, are not to be treated as grandchildren of the testator, is to place a narrow and technical construction on the word, not justified under the circumstances of this case. We hold that the children of Alfred Groves are entitled to participate as grandchildren in the estate of the testator under the terms of the will.

3. The administrator was without authority to use the

funds of the estate in the purchase of the bonds of the Washington Heights Land Company; when he used these funds to purchase the bonds in his own name, the investment was a personal one, and he will be held liable to the estate for the amount used, with interest. We have not been referred to any statutory provision authorizing any such investment by an administrator at the time these bonds were purchased. The provision in Code 1923, Chapter 87, Section 23, has been held to apply only to funds held by fiduciaries who represent the court. *Hurt* v. *Bristol*, 104 Va. 213, 51 S. E. 223, 7 Ann. Cas. 679. Whether or not this be the proper construction of the section, no claim is made that the approval of this transaction was asked of any court. Under these circumstances, it was the personal act of the administrator for which he must be held accountable. The fact that the administrator may have believed the purchase of the bonds to be a wise investment, as evidenced by the substantial investment of his personal funds therein, is not material; but if it were material, the circumstances under which the bonds were purchased do not show the so-called investment to be a proper one. While the record is meager as to the affairs of the company whose bonds were purchased, we do find that bonds were issued in excess of the actual investment in the property. The actual investment in the property which presumably secured the bonds was $175,431.31; the bond issue was $175,600.00. The property of the company listed in the above aggregate consisted of land, $75,000.00, and the residue was made up of road construction, engineering, water tank, lights, road building equipment, etc., certainly a poor class of security. The slightest investigation would have disclosed this state of affairs. We do not consider it necessary to further discuss this point, or to cite authorities in support of our position. Both the law and the facts condemn the use of the estate's funds in this highly speculative venture.

4. The commissioner of accounts and both the county and circuit courts held the administrator chargeable with

the interest actually received by him on the funds of the estate up to December 1, 1923, about which time the purchase of the bonds of the Washington Heights Land Company was made. No interest was charged on $7,-000.00, used by the administrator in his purchase of these bonds, until May 20, 1930, the date when the will was established. We have held that the purchase of the bonds was the personal investment of the administrator, the effect of which was a conversion of the estate to his private use. It follows that he is accountable for interest on the sum so used. We approve the order of the circuit court as to interest chargeable to December 1, 1923, and the charge of legal interest after May 20, 1930, but, in addition, would require the administrator to account for legal interest on the $7,000.00 invested in bonds, from the date of that investment to May 20, 1930.

5. Having disposed of the question of the liability of the administrator for interest, there remains that of the rights of the several legatees and devisees to interest on the several amounts due them under the will. The administrator having paid to each of the daughters an amount in excess of the $2,000.00 legacies to which we have held them to be entitled, the payments so made will be held to be in satisfaction of the legacies, leaving the balance paid to be applied on the sums due them under the residuary clause of the will. Interest should be paid to them on any balance remaining due at the rate of four per cent until December 1, 1923, and at the rate of six per cent from that date until final settlement. The same rates of interest should be paid on the amount due Alfred Groves and the grandchildren of the testator, the grandchildren to have preference in payment over those taking under the residuary clause. This will bring about exact equality among those taking under the will. If, in the application of this ruling, it is found that there has been an over-payment to any person taking under the will, the administrator will be charged with such over-payment, leaving to him any remedy he may have, under the law, for the recovery from the person receiving

the same. Any over-payment is the responsibility of the administrator.

Other matters raised on the record require consideration. (1) The disposition of the proceeds of the sale of the tract of 14 acres of land amounting to $490.00. This sum did not go into the hands of John W. Groves, as administrator, and the parties entitled to this fund must look to him individually for relief. (2) The administrator was entitled to commissions on $21,504.58, actually distributed by him, amounting to $1,075.21. (3) We are not disposed to disturb the action of the circuit court in the allowance of $500.00 made to the attorney for the administrator. This is a matter peculiarly within the province of the trial judge, and any action on our part in overruling him on that point would not be justified on the record before us.

It results from the foregoing that the judgment of the circuit court is affirmed in part, reversed in part, and the case will be remanded to that court for further proceedings not in conflict with the opinions expressed herein.

*Affirmed in part; reversed in part; remanded.*