## Staunton.

## POFF, ET ALS V. POFF, ET ALS

## and

## NOLLEY, ET AL V. POFF, ET ALS.

### September 16, 1920.

.1. ABATEMENT AND REVIVAL—*Death of Party—Appeal and Error.*—
Where the death of a party to a suit or action occurs before
an appeal is allowed or writ of error is awarded, the suit or
acton abates as to the deceased party. If an appeal or writ
of error is sought in behalf of the estate of such deceased
party, the application must be made by petition of his repre-
sentative.

·2. APPEAL AND ERROR—*Abatement and Revival—Death of Party.*—
Where an appeal is allowed or writ of error awarded before
the death of a party to a suit or action, the case is from that
moment a case pending in the appellate court, and under the
statute (Code of 1887, sec. 3307, Code of 1904, sec. 3307, Code
of 1919, sec. 6167) there is no abatement in the appellate
court because of the death. The same was very nearly true
at common law. The statute effected no other change in the
procedure than that it expressly leaves it to the discretion of
the appellate court, where the death is made known to such
court and is suggested on its record, to proceed with the case
and enter judgment or decree as if such death had not oc-
curred; whereas prior to the statute, a practice had grown
up requiring, in case of death of either party, if made known
to the appellate court and suggested on its record, a revival
of the appeal or writ of error by consent or by *scire facias.*

:3. APPEAL AND ERROR—*Appeal Bonds—Necessity of Appeal Bond—
Protection of the Estate of a Decedent.*—Section 6351 of the
Code of 1919 in effect provides that where an appeal is "proper
to protect the estate of a decedent," no appeal bond is re-
quired. After an appeal has been taken by a party himself,
in due time so far as the appeal is concerned, and he there-
after dies before the expiration of the statutory period within

which an appeal bond would have had to have been given had
he lived, leaving the appeal pending and unaffected by the mere
fact of his death, the continued pendency of the appeal being
in such case unquestionably necessary to protect his estate
after his death, the case falls within the reason of section 6351.

4. ADVANCEMENTS—*Hotchpot—Case at Bar.*—In the instant case a
gift of a farm under the will of a father to his younger sons
was, under the circumstances, a gift by way of advancement,
so that, under Code of 1919, section 5278, it must be brought
into hotchpot with the whole estate of the decedent as a condi-
tion entitling such sons to participate in the partition or distri-
bution of the estate as to which the decedent died intestate.

5. ADVANCEMENTS — *Hotchpot — When Doctrine Applicable — Pre-
sumption in Favor of Advancements.*—The doctrine of advance-
ments is applicable only to the division of the portion of the
donor's estate of which he dies intestate. As to such estate
it is well settled that, in the absence of statute prescribing
in what manner the intention on the subject shall be expressed,
where the gift is substantial in amount and is of the char-
acter of the gift in question in the instant case, the law at-
taches the presumption to every gift of an ancestor to a de-
scendant that it is a gift by way of advancement. This pre-
sumption is one of law.

6. ADVANCEMENTS—*Presumption in Favor of Advancements.*—The
presumption in favor of an advancement must be rebutted by
affirmative proof that the gift was not intended to be a gift
by way of advancement.

7. ADVANCEMENTS—*Presumption in Favor of Advancements—Re-
buttal of Presumption—Case at Bar.*—In the instant case
where a testator gave a farm to his younger sons, the follow-
ing declaration in his will furnishes no affirmative proof that
the gift of the farm was not intended to be a gift by way of
advancement: "I have other property that I do not attempt
to dispose of in this will concerning the farm. I may some
time in the future make a will as to the residue of my estate,
or I may dispose of it in my lifetime, or I may die inestate
as to said residue."

8. GIFTS—*Choses in Action—Equitable Assignments — Delivery.*—
In the instant case a father told his sons to pay a certain
amount of money which the sons owed him to their sisters,
which the sons agreed and consented to do.

*Held:* That the transaction which was entirely oral was not a
deposit of money into the hands of the sons in trust for their
sisters, nor was it a gift by way of a declaration of trust,

but was an attempted equitable assignment of a chose in action which failed because of the lack of some act of the donor making or equivalent to the making of the transfer of the possession of the subject of the gift from himself to the donees, or some one in trust for the latter.

9. . Equitable Assignments — *Choses in Action — Delivery.* — Although the gift of a chose in action is an equitable gift, it must be executed in order to be valid. The delivery of some instrument by using which the chose is to be reduced into possession, as a bond or a receipt or the like, is absolutely essential to the validity of the gift. The delivery of such instrument need not be actual; it may be symbolical.

10. Equitable Assignments—*Choses in Action—Delivery—Debt of Which There is No Documentary Evidence.*—Where a previously existing debt is sought to be given of which there is no documentary evidence, as where there is but an implied promise of the debtor to pay the creditor, "there is nothing of which even a symbolical delivery can be made, and therefore, there can be no valid, binding, and executed gift."

11. Gifts—*Declaration of Trust—Parol Gift of Chose in Action.*—Although gifts by way of a declaration of trust are upheld as executed gifts, in violation of the rule as to the necessity of delivery of possession of the subject of the gift, actual or symbolical, the rule is otherwise in cases of attempted gifts of choses in action which are not effectual where there is a lack of symbolic delivery. The defective assignment cannot be treated as tantamount to a declaration of trust.

12. Stare Decisis — *Long-Settled Rules — Gifts — Delivery.* — The courts are powerless to change rules of law which have been long and firmly established, although the rules may appear to be technical, and undoubtedly work grave hardships in some cases; as for example, the rule requiring an actual or symbolic delivery to perfect a gift.

Appeal from a decree of the Circuit Court of Montgomery county. From the decree all the parties appealed.

*Affirmed.*

The appeals before us are in but one suit in equity, and involve the following questions:

1. Whether the appeals should be dismissed on the ground that no appeal bond was given as the statute requires.

2. Whether the gift of a certain farm by J. W. Poff, deceased, by his will, to his four younger sons, James C. Poff (the J. C. Poff mentioned in the title of these causes), John H. Poff, Roy A. Poff and Christie H. Poff (who will hereinafter be referred to as the younger sons), was by way of advancement under the statute on that subject, so that the younger sons must bring such gift into hotchpot in order to entitle them to share in the partition or distribution of that portion of his estate of which the said decedent and testator died intestate; and

3. What was the effect of the payment by the testator in his lifetime of a part of the lien debt on said real estate which was made by the will a charge on said farm?

The facts shown by the record, bearing on the first question mentioned, are as follows:

The second above entitled case is not a separate suit. The plaintiffs therein are plaintiffs merely as petitioners to this court. They were among the defendants in the first above entitled case, and set up their claims by answer therein, and the decree presently to be mentioned being against them, they, as well as the plaintiffs in error in the first entitled cause, appealed.

The decree appealed from was entered on July 17, 1918—the same decree being involved in both of the appeals.

The petitions for appeal, accompanied by the record, were presented to one of the judges of this court on April 14, 1919. The appeal and supersedeas was allowed by this court, on each petition, on June 23, 1919, subject to the provision in the orders allowing the same, that the petitioners or some one for them should execute the appeal bond with sufficient security in the penalties fixed by such orders and conditioned as the law directs.

After making the proper deduction for the time during which the petitions and record were in the hands of one of the judges of this court, the 25th day of September, 1919,

was the last day on which the appeal bonds could have been executed within the period of one year from the entry of the decree appealed from. No appeal bonds were executed within that period.

In August, 1919, however, the said J. C. Poff died. His executor qualified on September 1, 1919, and gave bond as such executor. It is claimed by the petitioners that upon the death of J. C. Poff the appeal in both causes became "an appeal  *  *  *  proper to protect the estate of a decedent," within the exception provided by statute (Code 1919, section 6351), under which no appeal bond is required to be executed.

The facts shown by the record bearing on the other questions mentioned are as follows:

The will above mentioned was executed on the day of its date, November 2, 1912, was probated on June 10, 1915, three days after the death of the testator, and is as follows:

"I, J. W. Poff, of Montgomery county, Virginia, do hereby make this my last will and testament in reference to my farm hereinafter described in this will.

"First: I give and devise to my four younger sons, namely: John H. Poff, Roy A. Poff, James C. Poff and Christie H. Poff, the farm on which I now live, which is in Montgomery county, about three miles west of Christiansburg, on what is called the dirt road. Said farm contains 309 acres, and was conveyed to me by W. F. Flannagan and wife by deed dated the 31st of October, 1911, and recorded in deed book 60, page 531.

"There is $6,292.00 as of November 1, 1912, yet unpaid on said farm, which is evidenced by four bonds of $1,572.00 each, dated October 31, 1911, and bearing interest from the 12th of January, 1912, said bonds are due and payable as follows: one on the first of November, 1912, and one on the first of November thereafter, the last one due and payable November 1, 1916. This balance of purchase money

I hereby make a charge on said land, and my four sons above mentioned are to pay the same.

"Second: There is a marriage contract between me and my wife, Nancy Poff, which contract provides that in the event of my said wife, Nancy Poff, outliving me, then she is to get $150.00 a year from my estate in lieu of all of her dower right. This $150.00 per year I hereby make a charge on said land, and my said sons are to pay the same to my said wife each year as long as she may live. One-half of said amount is to be paid on January 1st, and one-half on the first of July of each year.

"Third: My said four younger sons above mentioned are now in possession of said farm under a rent contract, which rent contract shall continue so long as it is mutually agreeable between my four said younger sons and myself.

"Fourth: In the event of my making any other disposition of the farm herein willed to my four younger sons, they are to have a lien on said farm for whatever amount they have paid on the said balance due thereon as set out in the first clause of this will.

"Fifth: I have other property that I do not attempt to dispose of in this will concerning the farm. I may sometime in the future make a will as to the residue of my estate, or I may dispose of it in my lifetime, or I may die intestate as to said residue.

"In witness whereof I hereunto set my hand and affix my seal this 2nd of November, 1912.

"J. W. POFF.   (Seal).

"The above signature of the testator, J. W. Poff, was made and the foregoing will was acknowledged by the said J. W. Poff in the presence of us, two competent witnesses, present at the same time; and we, the said witnesses, do

hereunto subscribe said will in the presence of said testator and each other at the request of the said testator, this the 2nd day of November, 1912.

> "CHAS. I. WADE,
> "B. M. HAGAN."

There is parol testimony in regard to the gift of the farm to the younger sons, which in substance is as follows:    A day or two before the will was executed, the father told the younger sons that he was going to give them the farm, to belong to them "after his death," if they would pay the lien debt aforesaid, which they consented to do, and it was understood between the parties that the father would in some way execute a proper instrument in writing to make a valid transfer of the farm.    Accordingly, a day or two thereafter, the father and one of the younger sons went to Christiansburg to have a lawyer draw up the proper paper for the father to execute.   There was no prior understanding as to what the character of the paper was to be.    The son who accompanied the father on this trip thought it was going to be a contract.    The will was then drawn by the lawyer and executed by the father and testator, but not in the presence of the son last mentioned.    After the will was executed this son paid the lawyer his fee for the draft of it, and, not knowing the character of the paper, asked the lawyer if the younger sons should sign it.    The lawyer told him that the matter was all fixed according to the way the father wanted it, from which this son thereafter understood that the paper was a will, although he was not so told by the father or the lawyer or any one else.    The father, soon after the execution of the will, in 1912, mentioned to this and to the other younger sons that "he had fixed" the matter of the gift of the farm in a way which was to the effect that he made the gift to be theirs after his death,

subject to their payment of the lien debt aforesaid binding thereon, which he had made a charge upon it.

The farm was rented to the younger sons by the father, from the time he acquired it in 1911 until his death.

The lien debt aforesaid was for the unpaid purchase money for the farm, as stated in the will, and one W. F. Flannagan, the vendor, held the bonds evidencing such debt. The younger sons did not in fact expressly assume the payment of such debt by any endorsement on such bonds or otherwise, and they executed no express obligation to the father to pay such debt.

The said testator was married twice and had a number of other children besides those above mentioned, and at his death left surviving him three other sons, hereinafter designated the older sons, two daughters, who are the plaintiffs in the second above entitled case, and four infant grandchildren, the offspring of another but deceased daughter. The testator's second wife also survived him, but she was provided for by the marriage contract which is mentioned in the will, about which there was considerable litigation in the court below, but that is not involved in the appeals before us and hence will not be further mentioned.

Said testator died intestate as to the following estate: A house and lot in the possession of Mrs. Nolley; fifty-one per cent. of the mineral interest in a tract of 670 acres of land, the value of which is altogether problematical; the $4,000 debt to him of his younger sons, presently to be mentioned; and a small amount of personal assets consisting of debts due his estate.

The holder of the bonds evidencing the aforesaid lien debt charged on the farm, aforesaid, by the will, placed them in bank for collection as they fell due, and the testator paid to the bank two of these bonds and made a partial payment on a third one of such bonds by the fall of 1914. Such payments aggregated, as of the latter date, about

$4,100, approximately; but it will be hereinafter referred to, as it is in the record, as being the sum of $4,000. The testator took no assignment from the bank, or from the owner of them, of the two bonds which he thus paid, nor of any portion of the bond which he partially paid as aforesaid. The two bonds thus paid in full were stamped by the bank as paid, and turned over to the testator, who held them in his possession and they were among his papers at his death. The partial payment was credited by the bank on the proper bond as paid, and that bond remained in the custody of the bank or of the owner of it.

In the fall of 1914, after the aforesaid payments had been made by the testator, three of the younger sons had interviews with him on that subject. In these interviews the testator mentioned the amount he had paid, as aforesaid, and said that the four younger sons "owed him that," whereupon they admitted the indebtedness and offered to pay him the amount, and offered to give him a check therefor, but he declined to receive such payment, and said (to use the words of the testimony of one of the younger sons, R. A. Poff), that "he wanted us to pay it to our two married sisters," Mrs. Nolley and Mrs. Pritchett (the petitioners aforesaid in the second above entitled cause). The testimony of John H. Poff, another of the younger sons, as to what the testator said on the occasion of such interview with him, with respect to the $4,000, is that "he wanted us to pay it to our two married sisters, Mrs. Nolley and Mrs. Pritchett." The testimony of another younger son, J. C. Poff, on this subject is that on the occasion of such interview with him the testator said, "* * * he told me he wanted it paid to my two sisters, Mrs. Nolley and Mrs. Pritchett." C. H. Poff, the other younger son, did not testify in the case, but the testimony is uncontroverted to the effect that all four of the younger sons consented and agreed

to make the payment of the $4,000 to said sisters, as directed by the testator.

By the decree under review the court below held—

First, that the four younger sons "are not entitled to anything further from the estate of J. W. Poff unless they bring into hotchpot what they received under J. W. Poff's will;" and

Second, that the two sisters, Mrs. Nolley and Mrs. Pritchett, "are not entitled to the money paid by J. W. Poff" (for the four younger sons) which the sisters are "claiming as a gift from J. W. Poff," but that the younger sons are indebted to the estate of J. W. Poff to the amount of such money paid for them by the latter in his lifetime.

It seems to be a concession that the farm exceeds in value the share of the younger sons in the real estate of the ancestor; and no question is raised in the case under the doctrine of *McCoy* v. *McCoy,* 105 Va. 829, 837, 54 S. E. 995.

*Staples & Cocke* and *M. H. Tompkins,* for the appellants.

*Hall, Wingfield & Apperson* and *Harless & Colhoun,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented for our decision by the assignments of error will be disposed of in their order as stated below.

1. Should the appeal in the first above entitled case be dismissed on the ground that no appeal bond was given as the statute requires?

The answer to this question depends upon whether the statute on the subject requires an appeal bond to be given in such a case. The precise question seems to be a novel

one; but the statutory history of the subject and the principles involved make it very plain to us that no appeal bond is required by the statute to be given in such a case, and, hence, that the question under consideration must be answered in the negative.

[1, 2] The well settled distinction with respect to abatement, between the effect of the death of parties to a suit or action where the death occurs before, as compared with where the death occurs after an appeal is allowed or writ of error is awarded by the appellate court, must be borne in mind. Where such death occurs before the appeal is allowed or the writ of error is awarded, as the case may be, the suit or action abates as to the deceased party. If an appeal or writ of error is sought in behalf of the estate of such deceased party, the application must be made by petition of his representative. *Booth* v. *Dotson,* 93 Va. 233, 25 S. E. 113. But where an appeal is allowed or writ of error awarded before such death, the case is from that moment a case pending in the appellate court, and under the statute (Code 1887 and Pollard's Code 1904, section 3307; Code 1919, section 6167)—and the same was very nearly true at common law—there is no abatement in the appellate court because of the death. *Reid* v. *Strider,* 7 Gratt. (48 Va.) 76, 54 Am. Dec. 120; *Booth* v. *Dotson, supra* (93 Va. 233, 25 S. E. 113) ; *Cumming* v. *Cumming,* 127 Va. 16, 102 S. E. 572. The statute just cited effected no other change in the procedure than that it expressly leaves it to the discretion of the appellate court, where the death is made known to such court and suggested on its record, to proceed with the case and enter judgment or decree as if such death had not occurred; whereas, prior to the statute, a practice had grown up, as stated in the opinion of the court delivered by Judge Baldwin in *Reid* v. *Strider,* just cited, "probably borrowed in substance from the English House of Lords, in equity, requiring, in case of death of either

party" (if made known to the appellate court and suggested on its record as aforesaid), "a revival of the appeal or writ of error by consent or by *scire facias.*" But it was held, indeed, in the case just cited, in substance, that the appellate court in truth had, before the statute, practically the same discretion and power in the premises as is expressly conferred by this statute; and the precise effect of the statute seems to have been merely to prevent the practice mentioned from crystalizing into an inflexible rule of procedure. Such is the effect of the statute last cited, and it has no further bearing upon the question we have under consideration. The death of one of the appellants, J. C. Poff, which occurred after the appeal in question was allowed, had no effect whatever upon the pendency of the suit in this court, and the appeal cannot be dismissed unless the statute of limitations on the subject of appeal bonds is applicable to the cause before us.

[3] The last mentioned statute is in two sections (Code 1919, sections 6351 and 6355). The latter section of the statute, in effect, provides that, where an appeal bond is required by section 6351 to be given, the appeal shall be dismissed whenever it appears that the appeal bond has not been executed within the statutory period. Such period, if any appeal bond is required therein, expired in the case before us on September 25, 1919. The former section of the statute, in effect, provides that where an appeal is "proper to protect the estate of a decedent," no appeal bond is required.

Now it cannot be doubted that upon and after the death of J. C. Poff, after the appeals aforesaid were allowed, the appeal in the first above entitled case became and still remains an appeal proper to protect such decedent's estate. But it is argued that it was not such an appeal at the time it was applied for or allowed, and that the statute of limitations on the subject of appeal bonds speaks as of the time

the appeal is applied for and is allowed, with respect to the cases in which an appeal bond is required; and that only as to those cases in which an appeal is taken by a personal representative to protect the estate of his decedent does the statute provide that no appeal bond is required. It is also urged that the statute having begun to run, no subsequent happening, such as the death of any of the parties, will suspend its operation.

Now the statute does not by its terms say that the person taking the appeal is at all material, but only, in substance, that where the appeal itself is proper to protect the estate of a decedent no appeal bond is required. And after an appeal has been taken by a party himself, in due time so far as the appeal is concerned, as in the case in question before us, and he thereafter dies before the expiration of the statutory period within which an appeal bond would have had to have been given had he lived, leaving the appeal pending and unaffected by the mere fact of his death, the continued pendency of the appeal being in such case unquestionably necessary to protect his estate after his death, the case certainly falls within the reason of the provision of the statute which exempts cases involving the estates of decedents from the need of the giving of an appeal bond. Any other construction would be extremely technical, and would deny the remedial effect of the statute, to which the estate of such a deceased party seems plainly entitled when we consider the object aforesaid of the provision making said exemption, as such object is stated in the statute itself.

As to the view urged in argument, that the statute of limitations on the subject of appeal bonds speaks as of the time of the application for and the allowance of the appeal, this can find support only in the theory that there is some inseparable connection between the application for or the allowance of the appeal, and the giving of the appeal bond. This view may seem to receive some color from the consider-

ation that the requirements that the appeal must be applied for within the statutory period of one year, and that the appeal bond (in the cases where such bond is required) must be given within the same period, are found in the same statute. The history of the statute, however, discloses that the provisions on these two subjects are as much separate and independent of each other as if found in widely different statutes.

Prior to the Code of 1849, there was no statute of limitations fixing any definite period within which appeal bonds must be given. The statute of limitations fixing a definite period within which appeals and writs of error must have been applied for was then in existence, practically in the same form as it exists at the present time, except that the statutory period was then different. The statute prior to the Code of 1849 also provided for appeal bonds to be given; but there was no provision therein, as there is now, for the dismissal of the appeal if the appeal bond was not given as required. In that state of the law, it was held that where the appeal was once allowed within the statutory period, the appeal remained pending although no appeal bond was given as required by the statute, and the appeal could not be dismissed by the appellate court merely for lack of such appeal bond. *Williamson* v. *Gayle*, 4 Gratt. (45 Va.) 180.

Then came the enactment in the Code of 1849 (section 17, p. 686), of our present statute aforesaid (Code, 1919, section 6355), except that the statutory period thereunder was different, providing that "The appeal * * * shall be dismissed whenever it appears that" (the statutory period) "has elapsed * * * before such bond is given as is required to be given before an appeal * * * takes effect."

We are, therefore, of opinion that upon a motion to dismiss an appeal the statute last mentioned speaks as of the portion of the time which may remain of the statutory period aforesaid within which the appeal bond must be

given in all cases where such bond is required, and it speaks last on this subject on the last day of such period. Hence, the question arising on such motion which is involved in the case ·before us is this: Is it a case in which an appeal bond is required to be given, viewing the case as it existed on such last day, to-wit, on September 25, 1919? And, since on and as of such last day the pending appeal under consideration was one proper to protect the estate of a decedent, we are of opinion that no appeal bond was required.

It is immaterial whether when an appeal is allowed the ·decedent had died and his personal representative is then a party to the cause, or whether the death occurs afterwards and the personal representative is not a party to the cause. After the appeal has been once properly allowed, it is the appeal itself with which the statute deals, and with the need of its continued pendency in order to protect the estate of the decedent, and not with the question of whether the decedent or his personal representative is a party before the appellate court.

To sustain the view urged upon us for appellees that the statute in its requirement of appeal bonds has in view the parties to the cause as of the time that the appeal is applied for and is allowed, and that the statute of limitations on the subject is then set in motion, and that it thereafter, like other statutes of limitations, runs over all supervening disabilities, the case of *Pace* v. *Ficklin,* 76 Va. 292, is cited and relied on. There are expressions in the opinion of the court in that case which may seem to support the views contended for. It is said in that opinion, delivered by Judge Staples, that "The statute" (in its exemption dispensing with the requirement of appeal bonds when the appeal is proper to protect the estate of a decedent), "only applies to those cases where the estate of a dead man is injuriously affected by a decree, and the appeal is taken by the personal representative to protect his estate." But in that case the

question in issue on the subject was whether the appeal was taken to protect the estate of the decedent which was there alleged as needing the protection of the appeal, or was taken to protect and did in fact protect only the estate of another party, a bankrupt, not a decedent. The latter was held to be the situation. Moreover, in that case the decedent in question died before the appeal was applied for, and hence any appeal to protect his estate would have had to have been applied for by his personal representative. Hence, while it is true that any utterance of the learned judge who delivered the opinion just mentioned, although it may be but *obiter dicta,* carries with it great weight, we are satisfied from the nature of the case in which the language quoted was used that the reference therein to the person by whom the appeal is to be taken was not intended to be exclusive in its application, but adverted to cases in which the personal representative was the proper party to take the appeal, and that the object of the appeal was the leading thought in mind. Certainly the decision on the point rests upon the single consideration of what was the object of the appeal.

What is said in the case last cited, on the subject of the running of the statute of limitations over all disabilities when it once commences to run, has reference to a different subject altogether from that which we have under consideration, and is not in point. The reference is to that aspect of the case in which it was granted that an appeal bond is required where the appeal is necessary to protect the estate of a bankrupt, who is not dead, so that the statute of limitations in question began to run, and the question was whether the running of the statute was suspended between the death of one assignee in bankruptcy and the qualification of his successor. In the case before us, as it is not one in which an appeal bond is required, the statute of limitations on the subject never began to run.

We are of opinion, therefore, that the appeal in the first above entitled case should not be dismissed.

The appeal in the second above entitled case must be dismissed, but without prejudice to the rights of the appellants involved therein, which are inseparably involved in the appeal in the first above entitled case, and will be determined by the decision we shall make in such case touching the same.

[4] 2. Was the gift, under the will of J. W. Poff, deceased, to his four younger sons, of the farm in the will mentioned, a gift by way of advancement, so that, under the statute in such case made and provided, it must be brought into hotchpot with the whole estate of the decedent as a condition entitling such sons to participate in the partition or distribution of the estate of which the decedent died intestate?

We are of opinion that this question must be answered in the affirmative.

The statute in question has not been changed since the cause of action in the case before us arose, and was then, as it is now, in the form in which it appears in the Code of 1919, section 5278, as follows:

"Where any descendant of a person dying intestate as to his estate, *or any part thereof*, shall have received from such intestate in his lifetime, or *under his will*, any estate, real or personal, by way of advancement, and he, or any descendant of his, shall come into the partition and distribution of the estate with the other parceners and distributees, such advancement shall be brought into hotchpot with the whole estate, real and personal, descended or distributable, and thereupon such party shall be entitled to his proper proportion of the estate, real and personal." (Italics supplied.)

What is a gift "by way of advancement" is defined in the opinion of this court handed down at the present term by

Judge Prentis in the case of *Payne* v. *Payne, ante* p. 33, 104 S. E. 712, and what is there said need not be here repeated.

[5] The doctrine of advancements is applicable only to the division of the portion of the donor's estate of which he dies intestate. As to such estate it is well settled that, in the absence of statute prescribing in what manner the intention on the subject shall be expressed, such for example as exists in Illinois (see *Elliott* v. *Western Coal Co.,* 243 Ill. 614, 90 N. E. 1104, 134 Am. St. Rep. 398, 17 Ann. Cas. 884), where the gift is substantial in amount and is of the character of the gift in question in the case before us, the law attaches the presumption to every gift of an ancestor to a descendant that it is a gift by way of advancement. 1 R. C. L. section 21, p. 668; Graves' Notes on Real Prop., section 167; *McDearman* v. *Hodnett,* 83 Va. 281, 2 S. E. 643; 2 Minor's Inst. (3d ed.), pp. 514 *et seq.* This presumption is one of law and is based upon the supposed intention or desire of the ancestor that any inequalities in the division of his whole estate among his heirs at law and distributees, according to the statute of descents and distributions, occasioned by gifts made "by way of advancement," shall be corrected as far as practicable in the subsequent division of that portion of the donor's estate of which he dies intestate. For, as laid down by the authorities, there inheres in the nature of every gift from an ancestor that it may be a loan, by which a debt is incurred; or it may be a gift by way of advancement; or it may be a pure gift, involving neither obligation of payment, nor necessity of bringing it into hotchpot as the condition of sharing in the *post mortem* division of the ancestor's estate. And, as it is said, "As between a loan, a gift and an advancement, the presumption is in favor of an advancement, because of its tendency towards that equality of distribution   *   *   * which is presumed to have been intended." 1 R. C. L., sec-

tion 2, p. 665; Graves' Notes on Real Prop., note to section 167, p. 197.

[6, 7] This presumption, it is true, may be rebutted by affirmative proof that the gift was not intended to be a gift "by way of advancement." 1 R. C. L., section 17, p. 665, and the other authorities above cited. But we find no such proof in the case before us. The only evidence which is relied on by the appellants to furnish such proof is the declaration of the testator in the fifth clause of the will aforesaid, which is as follows:

"I have other property that I do not attempt to dispose of in this will concerning the farm. I may some time in the future make a will as to the residue of my estate, or I may dispose of it in my lifetime, or I may die intestate as to said residue."

The most that can be said of this declaration is that it is silent on the subject of whether he intended the gift of the farm to be a gift "by way of advancement." It certainly does not furnish any affirmative proof that the gift was not intended to be such a gift. In such state of the proof, the presumption aforesaid attaches to the gift.

The case of *Biedler* v. *Biedler*, 87 Va. 300, 12 S. E. 753, is relied on by appellants, but in that case the will not only made the specific devise constituting the gift in question, but added the provision that the remainder of the estate was to go "as the law decrees," manifestly referring to the direction of the statute of descents and distribution. The testator in that case thus expressed affirmatively the intention that the gift was not intended "by way of advancement," for in such case the remainder of the estate could not have been divided in accordance with the statute just mentioned.

We are therefore of opinion that the decree under review was correct in its holding on this subject.

We come now to the sole remaining question for our decision, and that is this:

[8] 3. Was the parol gift, made by J. W. Poff in his lifetime to his two married daughters, Mrs. Nolley and Mrs. Pritchett, of the $4,000 debt of the four younger sons to the donor, a valid gift?

We are of opinion that this question must be answered in the negative.

The payment of the money in question by J. W. Poff for the younger sons unquestionably created the relationship of creditor and debtor between them. The presumption of gift to the younger sons, which might have arisen from the bare fact of the payment, is rebutted by the express evidence in the case that J. W. Poff told such sons that they owed him the amount of the money so paid, and that they admitted the existence of such obligation.

The transaction was not a deposit of money, or other thing, by J. W. Poff into the hands of such sons in trust for the daughters, where the act of the donor in making the deposit accompanied the creation of a trust, so that there was a complete assignment or transfer of the subject of the gift in trust, as was true in the case of *Russell's Ex'rs* v. *Passmore,* 127 Va. 475, 103 S. E. 652. In such a case as that just cited, the act of making the deposit into the hands, not of a mere agent of the donor, but of a trustee who accepts the trust, is equivalent to the act of a donor in delivering the possession of tangible personal property, which is indispensable to the validity of a gift thereof *causa mortis,* and also of a gift thereof *inter vivos,* except that in the case of the latter character of gift of personal chattels, the acquiescence of a donor in a previously acquired possession of the donee has been held to be sufficient evidence from which to imply delivery of the possession. *Shankle* v. *Spahr,* 121 Va. 598, at pp. 607-8, 93 S. E. 605; *Wood* v. *Treadway,* 111 Va. 526, 69 S. E. 445, and authorities there cited; *Rus-*

11

*sell's Ex'rs* v. *Passmore, supra.* Besides the last mentioned exception to the rule that some act of the donor making, or held to be equivalent to the making of the transfer of the possession of the subject of the gift from himself to the donee, or to some one in trust for the latter, is essential to the execution, and, hence, to the validity of a gift *inter vivos*, as well as *causa mortis*, there is one other exception, and only one, namely, in the case of a gift by way of a declaration of trust. In such case, "the donor does not part with the possession of the subject of the gift, but retaining it, declares that he holds it *in* trust for the donee." See Gifts of Personalty, by Prof. Graves, 1 Va. Law Reg., at p. 878.

But the gift to the daughters in the case before us comes within none of the exceptions above mentioned, and is plainly an attempted equitable assignment of a chose in action, *i. e.*, of the debt due the donor by the younger sons.

[9, 10] The doctrine of equitable assignments as applied to the gift of a chose in action has been long well settled. Although it is an equitable gift, it must be executed in order to be valid. "The delivery of some instrument, by using which the chose is to be reduced into possession, as a bond or a receipt or the like," is absolutely essential to the validity of the gift. *Miller* v. *Jeffress*, 4 Gratt. (45 Va.) 472; Gifts of Personalty, by Prof. Graves, *supra* (1 Va. Law Reg. 877-8). The delivery of such instrument need not be actual. It may be symbolical. But one or the other is essential to the validity of a gift of a chose in action. Where a previously existing debt is sought to be given of which there is no documentary evidence—as where there is but an implied promise of the debtor to pay the creditor, as is true of the case before us—"there is nothing of which even a symbolical delivery can be made, and therefore there can be no valid, binding and executed gift." *Ross* v. *Milne*, 12 *Leigh* (39 Va.) at p. 222, 37 Am. Dec. 646.

[11] It may seem that since gifts by way of a declaration of trust are upheld as executed gifts, which is in direct violation of the rule aforesaid as to the necessity of delivery of possession of the subject of the gift, actual or symbolical, that the rule should be relaxed in the cases of attempted gifts of choses in action which are not effectual because of a lack of symbolic delivery; and that, since in such case the donor occupies the position of continued owner of the chose in action, he should, in equity, be held to have, by the declaration of gift, made a gift by way of a declaration of a trust; but the authorities are to the contrary. As said by Prof. Graves in his article on Gifts of Personalty, *supra* (1 Va. Law Reg. at pp. 879-880) : "\* \* \* it sometimes happens that a donor, with a gift intent, neither declares himself trustee nor makes an *effectual* equitable assignment, though his *purpose* is evidently to *assign*, and not to create a trust. The question then arises, can the defective assignment be treated as tantamount to a declaration of trust, and the gift sustained on that theory? Some of the earliest English cases are in favor of this view, but they are now discredited, and the doctrine is that an abortive assignment will not (contrary to the intent of the donor) be converted into an implied declaration of trust, in order to save the gift from failure. It is said by Jessell, M. R., in *Richards* v. *Dolbridge*, L. R. 18 Eq. 11: 'However anxious the court may be to carry out a man's intention (*i. e.*, to make a gift), it is not at liberty to construe words otherwise than according to their proper meaning.' And in *Moore* v. *Moore*, L. R. 18 Eq. 474, it is said by Hall, V. C.: 'I do think it very important to keep a clear and definite distinction between cases of imperfect gift and cases of declaration of trust; and that we should not extend, beyond what the authorities have already established, declarations of trust so as to supplement and supply what, according to decisions of the highest authority, would otherwise be imperfect gifts.' In other

words, a donor is legally put to his election whether he will *assign* or *declare a trust;* and if he elects the former, as is shown by his attempted assignment, the gift must stand or fall as the donor designed to make it; and if ineffectual as an assignment, it can derive no assistance from the doctrine of declarations of trust. Otherwise, it has been said, 'there would never be a case where an expression of a present gift would not amount to a declaration of trust, which would be carrying the doctrine too far.' Per Jessell, M. R., 18 Eq. Cas. 15."

[12] Therefore, while we have every disposition to uphold the attempted gift to the daughters, in question in the case before us, as a valid gift, we cannot do so without relaxing the rules aforesaid on the subject which have been long settled, and this, we feel, should not be done. The rules may appear to be technical, and they undoubtedly work grave hardships in some cases; but, as to gifts *inter vivos,* they are based upon the very same foundation as is the rule that no mere executory promise is enforceable, unless it is supported by a valuable consideration, a *locus peniten-tiae* being, in the wisdom of the common law, left attached to every matter of mere voluntary intention, until the intention is executed by an unequivocal act; they have been the subject of consideration and approval of many eminent judges and authorities; and contrary rules might result in a yet greater miscarriage of justice. At any rate, the courts are powerless to change rules so long and so firmly established.

We conclude, therefore, that there is no error in the holding of the decree under review on the question last disposed of, and it will be affirmed.

*Affirmed.*