## Staunton.

GEORGE R. RICHARDSON, ADMINISTRATOR OF
TERRY WEBBER, DECEASED, v. DEWITT
SHANK AND HENRY D. SHANK.

September 12, 1930.

Absent, Holt and Epes, JJ.

*T. W. Messick* and *A. B. Hunt,* for the plaintiff in error.

*Cocke, Hazlegrove & Shackelford* and *Kime & Kime,* for the defendants in error.

PRENTIS, C. J., delivered the opinion of the court.

This is a motion made by the administrator of Terry Webber alleging that his death was the result of the ac-

tionable negligence of DeWitt Shank, an infant son of Henry D. Shank, while operating his father's automobile on Main street in Salem.

There was a judgment in favor of the defendant to which a writ of error has been allowed.

1. There is a motion here by the defendant in error to dismiss the writ because no appeal bond has been given, and it is contended that no bond can now be given because more than six months have elapsed since the date of the final judgment.

■ That the failure to give bonds which are properly required under Code 1919, section 6351, within the period fixed by statute (now six months from the date of the decree or judgment) necessitates the dismissal of the writ of error or appeal pursuant to Code 1919, section 6355, as amended by Acts 1926, page 18, chapter 10, Code 1930 section 6355, is certain. This statute so directs, and it has always been construed as mandatory. *Yarborough* v. *Deshazo*, 7 Grat. (48 Va.) 374; *Otterback* v. *Alex. & F. Ry.*, 26 Grat. (67 Va.) 940; *Pace, Assignee* v. *Ficklin's Ex'x*, 76 Va. 292; *Poff* v. *Poff*, 128 Va. 62, 104 S. E. 719; *Witt* v. *Witt's Ex'r*, 146 Va. 256, 135 S. E. 681.

■ In this case, however, no bond was required by the judge of this court who allowed the writ. The defendants claim that under the statute, section 6351, a bond was imperative, and that the jurisdiction of this court depends upon the execution of such a bond within the time limited (six months). That statute does not prescribe a bond as necessary if the "appeal, writ of error or supersedeas is proper to protect the estate of a decedent, infant, convict, or insane person," etc. It has long been construed to relieve every administrator from giving such bonds. The most obvious reasons therefor are: That such a fiduciary has little personal interest in the action, has already given a bond on his qualification, and is generally the only person who can appeal because the persons ultimately entitled to

the sum recovered are never parties to such litigation in common law actions and frequently are not parties in equity suits.

It is contended, however, that because this case depends upon the statute allowing a recovery of damages for death by wrongful act (Code 1919, section 5787, as amended by Acts 1920, chapter 25), the exception relieving personal representatives from giving appeal bonds does not apply. This is the section which provides for the distribution of the amount of the recovery "to the surviving widow or husband and children and grandchildren of the deceased, or if there be none such, then to the parents, brothers and sisters of the deceased." The succeeding section, Code 1919, section 5788, contains these additional directions as to procedure and definitions of the rights of all persons who may, by the terms of the statute, have an interest in the recovery. This section 5788 reads:

"The verdict, if there be one, and the judgment of the court shall, in all cases, specify the amount or the proportion to be received by each of the beneficiaries, if any such there be. No verdict, however, shall be set aside for failure to make such specification, but if the jury has been discharged their failure to make the specification at the term at which the verdict is rendered shall be corrected by the trial court at any time before judgment is entered, and for this purpose it may hear evidence if deemed necessary. The amount recovered in any such action shall be paid to the personal representative, and after the payment of costs and reasonable attorney's fees, shall be distributed by such personal representative to the surviving wife, husband, child, and grandchild of the decedent; or if there be no such wife, husband, child, or grandchild, then to the parents, brothers and sisters of the decedent in such proportions as has been ascertained by the judgment of the court, and shall be free from all debts and liabilities of the deceased; but if there be no such wife, husband, child, grandchild,

parent, brother or sister, the amount so received shall be assets in the hands of the personal representative to be disposed of according to law. This and the preceding section are subject to this proviso: Where the decedent has left a widowed mother and also a widow, but no child or grandchild, the amount recovered shall be divided between the mother and the widow in such portions as the jury or court may direct."

From this it is seen that the amount of the recovery, less fees and costs, must be paid to the personal representative for distribution to those entitled thereto. If there be none of the class of preferred distributees then the amount received "shall be assets in the hands of the personal representative to be disposed of according to law." This seems to mean that, in the absence of any of the preferred class of distributees, the fund is liable for the decedent's debts and that the surplus is to be distributed to kinsmen of remote degree, just as all other personal estate not bequeathed is distributed.

It is conceded that if, in fact, in this case there were none of the preferred class, then no bond would be necessary or proper, but that because it is shown that there were a surviving brother and sisters, therefore, they only are or can be interested, and that, therefore, the estate of the decedent cannot be interested.

The contention is based upon certain expressions of this court in *Anderson* v. *Hygeia Hotel Co.*, 92 Va. 687, 24 S. E. 269, and *Richmond R. F. & P. R. R. Co.* v. *Martin's Admr.*, 102 Va. 201, 45 S. E. 894. The expressions in those cases must be construed with reference to the precise questions there decided. They bear only remote relation to the question here presented. Whether or not an administrator as plaintiff in error should give an appeal bond was neither presented, alluded to, nor decided.

Such a literal construction of section 6351 as is contended for would lead to much confusion and difficulty; would re-

quire in every case in which a petition for writ of error or appeal is presented by a personal representative, a careful but *ex parte* investigation in order to determine the ultimate beneficiaries of every recovery in the name of a personal representative of a decedent, and a mistake such as is claimed was made in this case would defeat the rights of all such persons having contingent interests in a possible recovery, though they are not parties to the proceeding. No bond is necessary by the terms of the statute in any such case if the appeal or writ is proper to protect the estate of a decedent, an infant, an insane person, or a convict. If the contention be sound that a bond is essential in this case because the purpose of the writ of error is not "to protect the estate of a decedent," then it would be equally essential in every case in which all the debts of the decedent had already been paid, and that, subject to costs, the amount of the recovery would be distributed to certain ascertained adult persons, who are neither insane nor convict. Such a contention would hardly be made in any case except one like this in which the recovery, if any, would be distributed under sections 5787 and 5788 to certain surviving preferred kin of the decedent who are said to be adult and sane.

In a certain literal sense the dead never have any "estate to be protected." The personal property which they leave behind belongs no longer to them but, subject to the rights of creditors, belongs to their surviving successors in title.

■ The estate of a decedent to be protected, within the meaning of that statute (Code, section 6351), is any claim or right which a personal representative as such must protect or defend because this is his bounden duty and because he is appointed for that very purpose.

■ There is still another reason for denying the motion. Code, section 6355, only directs the dismissal of the writ of error in case of the failure to give such bond "as is required to be given" before the writ of error "takes effect."

This means required as a condition precedent to the issuance of the writ. Here no bond was required by the judge who allowed this writ as a condition precedent to the effectiveness of the writ. Even though we were of opinion that a bond should have been required by the judge who allowed the writ, this mistake would not have avoided the writ. That was valid process, maturing the case, and made it subject to dismissal for good reason only. The failure to give a bond which had never been required and hence could not have been given is not a good reason for dismissing the writ. If the failure to direct a bond when the writ was allowed was a mistake this could and should be corrected when and as soon as discovered. This was the course pursued in *Reid Bros.* v. *Norfolk City R. Co.*, 94 Va. 117, 26 S. E. 428, 36 L. R. A. 274, 64 Am. St. Rep. 708, in which a supersedeas was granted to suspend the execution of a large judgment, but the penalty fixed was grossly inadequate. This mistake was corrected by an order revoking the supersedeas but allowing the bond to stand as an appeal bond for costs but without supersedeas.

For the reasons which we have indicated the motion to dismiss the writ is overruled.

The only assignment of error which it is necessary to discuss is that the trial court struck out all of the plaintiff's testimony, which necessarily resulted in a verdict and judgment for the defendants.

We shall not recite all of the testimony in detail because we think a more general statement will be sufficient to determine the question raised.

The testimony shows that Terry Webber was struck while walking straight across Main street, Salem, Virginia, not at a street crossing, but in the block between Market street and White Oak alley. He was knocked sixty-five feet to White Oak alley and died from his injuries the next day.

It seems to be confidently claimed that as one witness, who also made other statements tending to indicate the

defendant's negligence, said the decedent stepped in front of the automobile, this statement conclusively proves that his own negligence was the sole proximate cause of his death and that whatever the other circumstances may have been there can be no recovery. The trial judge must have so concluded when he sustained the motion to strike out all of the evidence for the plaintiff.

Among the other circumstances which should not be ignored are these: The street was straight, forty-one feet wide between the curbing. There was testimony tending to show that there were no other automobiles, moving or at rest, to confuse either of the parties or to obstruct the view; that the automobile at the instant of the tragedy was moving on the wrong or left side of the street; that no warning signals were sounded; and that it was being driven at a rate of thirty miles an hour in violation of a town ordinance limiting the speed at that place to fifteen miles an hour.

The argument to sustain the ruling emphasizes impressively all the circumstances tending to show the negligence of the deceased, but seems to overlook or underestimate the significance of those which tend also to suggest the negligence of the defendant driver of the car, e. g., the unobstructed view, the wide street, forty-one feet between the curbing, the excessive speed and the fact that the automobile was on the wrong side of the centre line of the street at the moment of the contact.

It is due to the defendants to say that in their grounds of defense they deny all negligence and aver that the driver was driving carefully close to the curb on the right side of the street going west, that he was keeping a proper lookout, and that the decedent suddenly came from behind a parked automobile and ran suddenly in front of the moving automobile and that the decedent's own negligence was the proximate and sole cause of his death. Of course

if the defendants can show this by a preponderance of the testimony the plaintiff is not entitled to recover.

We shall not undertake to support our conclusion that the trial judge erred in striking out all of the testimony lest we use some expressions which may be misconstrued when the case is retried.

We are of the opinion that the plaintiff was entitled to have the jury consider and pass upon the testimony which he adduced.

The principles governing such motions have been so recently stated that we think it unnecessary to repeat them here. *Limbaugh* v. *Commonwealth*, 149 Va. 393, 140 S. E. 133, 135; *Barksdale* v. *Southern Ry. Co.*, 152 Va. 604, 148 S. E. 683, 686; *Green* v. *Smith*, 153 Va. 675, 151 S. E. 282.

It follows from what we have said that we are of opinion to set aside the verdict, reverse the judgment, and remand the case for a new trial.

*Reversed and remanded.*