FIELD, P.
In September, 1836, the appellant executed his bond to his father-in-law, William Barrow', for the sum of $1,000. Barrow died without having collected the amount due on the bond, or any part thereof, either of principal or interest. His will bears date August 31st, 1841, and was recorded May the 6th, 1848. After which time, Benjamin Barrow, the executor, instituted suit, and recovered judgment on the bond, against the appellant, for principal, interest and costs. The appellant contending that the money for which the bond had been executed had been given to him by his father-in-law, as an advancement, filed his bill in the Circuit Superior Court of Law and Chancery of Franklin county, and obtained an injunction to restrain the '’'execution of the judgment. This injunction was after-wards dissolved on motion, from which order the appeal was taken. The bill charges that the $1,000, the consideration of the bond, had been given by Barrow to Arnold, by way of advancement, to aid him in carrying on the mercantile business, and states various facts and circumstances to-show that the $1,000 had been so given, and that the obligee did not intend to require it to be refunded to him. Amongst other allegations, the plaintiff stated in his bill, that it was the habit of Barrow when he made an advancement to a child, to take a bond to show the amount of the advancement. “And for the further purpose, that he might have the power of demanding the same, or any portion thereof, in case he should afterwards be reduced by misfortune *640 or otherwise, to the necessity of doing so.” And that the writing obligatory had been required in pursuance of this habit. In an amended bill the plaintiff alleged that the money was not wanted for the payment of the debts of the testator; which fact the executor, in his answer to the amended bill, admits to be true. In answer to the original bill, the defendant says the bond was given to secure the payment of $1,000, which his testator lent to the appellant. He claims that it was an advancement, or that it was agreed or understood that the appellant should account for it as an advancement after the testator’s death. He denies that it was the habit of his testator to take bonds like the one in question when he made advancements to his children. On the contrary, he avers his habit to have been, when an advancement was made, to have a written agreement, setting forth the terms, signed by both parties, and refers to and exhibits with his answer a paper of that sort, which had been executed by him and his father, in which he obliges himself, under his hand and seal, to pay his father $1,000, and in which the father, under his hand and seal, “requires that his son Benjamin account to his estate, at a future day, for the above sum of $1,000, without interest; also, another paper, pretty *much of the same form and ' effect, for the amount of $664. ” William Barrow’s will contains eight clauses, two only of which, the 4th and 6th, have any bearing on the questions under consideration. These clauses are as follows, to wit: 4th. “I have loaned to my daughter, Julia Arnold, a negro man named Tom and a negro boy, George. I have loaned to my daughter, Cassandra Choice, a negro man, Billy, and a negro girl, Ellen. I have loaned to my son Benjamin, a negro girl, Dilsy. I have loaned to my daughter, Ann Gravly, a negro man, Ellick. I have loaned to my daughter, Mary Stochter, a negro woman, Nancy, and a negro girl, Julia. I have loaned to my son, William, - — . All of which, when required by my executor, it is my will that the above named slaves, and the increase thereof, if any, all be returned to m3' estate for division. Which, together with the balance of my estate, real and personal, the portion allotted to my wife excepted, I wish divided amongst my six children above named.” “6th. Should any of my legatees to my estate fail or refuse to comply with my wishes, as heretofore set forth, then and in that case, it is my wish that he, she or they, be entitled to that portion alone which they have already received.” It is alleged in the bill, arid is also proved by a witness, that the appellant, after the death of William Barrow, refused to return to the estate the negroes Tom and George referred to in the 4th clause of the will as having been lent to Mrs. Arnold; in consequence of which, the appellant and his wife are, by the terms of the 6th clause, excluded from participating in the division of the testator’s state to be made under the 4th clause of the will. And, therefore, although the money for which the judgment has been recovered will not be wanted for the payment of debts, that circumstance affords to him no just cause for being released from the payment of the judgment, or any part thereof. The sole remaining question, then, is, Is the appellant entitled to be released from the payment of the judgment, on the ground that the bond is to be regarded as an advancement made by *Wm. Barrow in his lifetime to Arnold, to be accounted for after his death in the division of the testator’s estate? This depends upon the proofs in the cause. The deposition of Mrs. Susan Barrow, the widow of the testator, was taken by the plaintiff, and not excepted to, to prove, amongst other things, declarations made by Barrow to her, during the cover-ture, in relation to the advancement claimed by the appellant. She heard Barrow say a short time before Major Arnold received the money, that he had a thought of giving Major Arnold a lift by letting him have $1,000, for the purpose of going into business with Benjamin Barrow; and, at the time he received the money, Wm. Barrow told Major Arnold, that he never expected to call on him for the money; that he should not unless he should need it, but that if he did not call on him for it, he (Arnold) would have to account for it at a future day, as so much of his part of Barrow’s estate; and has heard him say re-peatedl3 since, that he never expected to call on Major Arnold for the money, and that he expected it to go as so much received from his estate. That it was his habit when he let his children have money, to take a bond for the amount, so that they could account, at a future day, tot the proper amount, as a part of their interest in his estate. Thomas Stuts, in his deposition, says, that he heard Wm. Barrow say that he had lent Major Arnold $1,000, had taken his bond to show, in a coming day, that he had lent him that much money, but never expected to call on him for the money himself. Thomas Hester, another witness, says, he went to Barrow’s to borrow money. Barrow told him he had lent James Arnold $1,000, and had none to spare. Judith Gilliam says, that she heard him say, at different times, that he had lent James Arnold and Benjamin Barrow money to merchandise with, and they had lost on it; he also said, that he never expected to receive it during his life, but that it was to be accounted for at his death.
This, I think, a fair and full statement of so much of the plaintiff’s testimony as tends to prove the making of *the advancement. In considering this testimony, we must bear in mind the allegation made by the plaintiff in his bill, that “one of the purposes for taking the bond was, that Barrow might have the power of demanding the same, or any portion thereof, in case he should afterwards be reduced by misfortune, or otherwise, to the necessity of doing so. ” This allegation *641 in the bill, considered in connection with the plaintiff’s testimony, so far from showing that the bond had been given or transferred, by Barrow to Arnold by way of advancement, shows that both parties intended, and considered, the bond to be a subsisting and valid debt due from Arnold to Barrow, the payment of which Barrow had a right to demand and enforce at his will and pleasure. The title to' this bond could have been transferred to Arnold by a written assignment, or by deliver of the bond to Arnold for the purpose of transferring it to him, and in no other way. See 2 Robinson’s Practice, (new work,) page 490, and the authorities there referred to. There has been made no such written assignment, nor has the bond been transferred by delivery either to Arnold, or to any person for him, in order to pass the title to the bond. On the contrary, it remained at all times in possession of Barrow until his ■death. The loose declarations of Barrow that he expected to give his son-in-law a lift, that the Si,000 was intended as an advancement, that he never expected to receive the amount of the bond himself, &c., &c., are not sufficient to destroy the legal effect of the bond. We regard this case as being analogous to the case of Haverstock v. Sarbach, 1 Watts & Serg. 390, in which the Supreme Court of Pennsylvania held that the loose declarations of a parent, that he intended an existing debt should be an advancement, not substantiated by writing, not made to the child, nor assented to by him, nor accompanied by any act, are not sufficient to destroy a debt, secured by a legal instrument in full force, and change it into a gift by way of advancement, ■whether offered by the son to defeat the recovery of the debt, or the representa-fives *of the father to defeat his claim for a distributive share.
Upon the death of William Barrow, the bond passed to his executor, in like manner, to all intents and purposes, as the testator held it at the time of his death. The executor was bound to demand and enforce payment 8f the bond, and to divide the proceeds thereof amongst such of the testator’s children as returned their negroes to the estate for the purpose of a division, in accordance with the wishes of the testator. In this division the plaintiff has no right to participate, and should therefore be required to satisfy the judgment in full. In fine, being of opinion that there is no error in the decree, it must be affirmed with costs.
The other judges concurred.