## Richmond.

## McDEARMAN v. HODNETT AND OTHERS.

### APRIL 28th, 1887.

1. PARENT AND CHILD—*Advancements—Evidence.*—A gift unexplained in the lifetime of an intestate father, to one of his children, is *prima facie* an advancement. His statements at the time, or subsequently, are competent evidence to show what was his intention. *Watkins* v. *Young*, 31 Gratt. 84.

2. IDEM—*Son-in-law.*—And so, such a gift to a son-in-law is *prima facie* an advancement to the daughter.

3. MARRIED WOMEN—*Advancements.*—The married women's act, (Acts 1876–77, p. 333,) does not affect the question of advancements.

Appeal from decree of corporation court of Danville, rendered May 5th, 1885, in the cause of Annie B. McDearman, by, &c., against M. B. Hodnett's Administrator and others. Decree being adverse to plaintiff, she appealed. Opinion states the case.

*A. M. Aiken* and *W. W. Henry*, for the appellant.

*Withers & Barksdale* and *Guy & Gilliam*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The object of this suit was the division of the estate of M. B. Hodnett, deceased, who died intestate in the year 1883. The plaintiff in the court below, the appellant here, who sued by her next friend, is one of the heirs at law

and distributees of the said intestate, who died, leaving a widow and six children—two sons and four daughters. At the time of his death, the daughters were all married. It is conceded that the intestate, in his lifetime, made advancements to five of his children, about which there is no dispute. The court below also held that the sixth, Mrs. Annie B. McDearman, the plaintiff, had been in like manner advanced to the extent of $780, paid for her husband, T. H. McDearman, by the said intestate in his lifetime, by way of advancement to his daughter, the said Annie B. McDearman, and decreed that she be charged accordingly. Whether the decree of the court below is, in this particular, right, is the question to be determined here.

The facts in relation to the matter are substantially these: On the sixteenth day of February, 1875, the said T. H. McDearman, as principal, and the said M. B. Hodnett, as surety, executed their three joint bonds, each for $394.82, payable in one, two, and three years, respectively from their date, to William E. Boisseau, special commissioner, for the purchase price of a certain parcel of land sold by Boisseau to the said McDearman; and the latter having made default in the payment of these bonds, the land was resold, after which a balance still remained due by him amounting, on the 10th of October, 1879, to the sum of $788.07. On the last-mentioned day, the said M. B. Hodnett, in the presence of two witnesses, to-wit: B. W. Hurt and John L. Taylor, whom he had specially requested to be present to witness the transaction, paid to the said Boisseau, in the office of the latter, the above-mentioned balance in full, and took in the aforesaid bonds, upon which was endorsed a statement by Boisseau of the payments so made by the said Hodnett. There was, however, no assignment of the bonds to Hodnett; and the payment appears to have been voluntarily made by Hodnett, and without even a previous demand of payment by said Boisseau. When this

transaction occurred, and when the money was paid, Hodnett said to Boisseau that he meant to charge it to his son-in-law, the said McDearman. And the witness Taylor testifies that Hodnett told him he wanted Hurt and himself to witness the payment of the money to Boisseau, because he (Hodnett) was liable to die at any time, and he desired them to witness that he paid it for McDearman, to whom he intended it to be charged as an advancement. To the same effect is the testimony of Hurt; and to several other witnesses Hodnett subsequently made similar statements.

Hodnett took no evidence of indebtedness from his son-in-law for the money so paid, and there is no evidence in the record that he ever spoke of the transaction, or in any way regarded it, as evidence of indebtedness on the part of his son-in law to him. It does appear, however, that he carefully put the bonds he had thus paid off, in a package of papers containing the receipts of his children and sons-in-law, to whom he made advancements, saying that the bonds, with the statement thereon endorsed, would "show as a receipt." This package he intrusted to the keeping of his wife, telling her to "see to it that each one of the children and sons-in-law accounted for what they had by these papers." And it appears that she preserved them locked in a trunk, where they were habitually kept, until after her husband's death, when she produced them.

Under these circumstances, it is very clear that the money paid for the plaintiff's husband was intended as an advancement to her, and that the payment was properly so treated by the court below.

This is not a case in which an existing debt, or an absolute gift, is sought to be changed into an advancement by evidence of "loose declarations" of the parent, not communicated or agreed to by the child, (as to which, see *Arnold* v. *Barrow*, 2 P. & H. 1; *Yundt's Appeal*, 13 Pa. St.

575); for here it is conclusively proved that the money was paid as an advancement, as declared by the parent at the time of the transaction, and repeatedly and consistently afterwards; that he took no assignment of the bonds, and that they were not delivered to him with the intention of being transferred, and were therefore not transferred; and there is not a particle of evidence to show that he ever considered the son-in-law as his debtor by reason of the payment aforesaid.

It is well settled that questions of advancement always depend upon intention. It was so held by this court in the recent case of *Watkins* v. *Young*, 31 Gratt. 84; and to the same effect are numerous cases. In *Watkins* v. *Young* the question was whether a gift made by the intestate in his lifetime, to one of his daughters, was intended as an absolute gift or an advancement. And in determining this question, it was said by the court that "the declarations of the decedent, made at the time and subsequent to the gift, may be given in evidence to show that the gift was not made as an advancement, but as an absolute gift, and *vice versa.*"

This principle, applied to the evidence in the case at bar, is conclusive in favor of the appellees. For although the payment in question was in discharge of a debt for which the parent was surety for the son-in-law, yet in view of the intention with which the money was paid, the payment was none the less an advancement to the daughter.

In *Peale's Adm'r* v. *Thurmond*, 77 Va. 753, an administrator of a deceased father who died indebted to his daughter, as her *de facto* guardian, was decreed to be entitled to set-off against such indebtedness the sum advanced by his intestate in his lifetime to the daughter and her husband. And among these advancements was a debt paid by the father, which he had incurred for the husband when in needy circumstances, and to assist him in business.

In *Hughes* v. *McCombs*, 66 N. C. 345, the court say : "It can scarcely be contended that a gift of property to a son-in-law would not be *prima facie* an advancement to the wife; and this being so, no reason is seen why the payment of the husband's debts would not be equally an advancement ; and no reason is seen why the father's having become surety for those debts should make the payment the less an advancement."

The appellant, however, contends that these principles do not apply in this State to a case like the present, because of the provisions of the act of April 4th, 1877, commonly called the married woman's act.   Acts 1876–77, p. 333.

The argument is that the act changed the relation of a husband towards his wife as respects her property, which is no longer subject to his disposal, or to the payment of his debts, but is to be possessed and controlled by her, as though she were a *feme sole*.   This may be true, but we do not perceive that it affects the question before us.   The object of the act is to secure to married women the enjoyment and control of their property, but not to interfere with the dominion over and right of disposal of one's property, or with the general law as respects the dealings between parents and their children, or the distribution of decedents' estates.   The question of advancements is, therefore, not touched or in any way influenced by the act ; nor was it designed to have any such influence.   We find no error in the decree complained of, and the same must be affirmed with costs to the appellees.

DECREE AFFIRMED.