# Richmond

GEORGE H. HARRISON'S EXECUTOR, ET ALS. V. REUBEN N.
HARRISON'S ADMINISTRATOR.

October 7, 1938.

Present, Campbell, C. J., and Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*Ward Swank, R. Gray Williams* and *J. Sloan Kuykendall,* for the appellants.

*F. S. Tavenner* and *Geo. S. Harnsberger,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

George S. Harnsberger, administrator c. t. a. of Reuben N. Harrison, deceased, filed his bill in the circuit court, alleging that Reuben N. Harrison died testate on the 3rd day of January, 1933; that his will was duly probated before the clerk of the Circuit Court of Rockingham county, and that complainant duly qualified as administrator with the will annexed; that George H. Harrison, father of complainant's decedent, died testate on March 6, 1932, and his will dated the 25th day of September, 1929, was duly probated before the clerk of the Circuit Court of Shenandoah county; that under and by virtue of the terms of his will, the testator gave and bequeathed: (1) To his wife, Josephine Harrison, the sum of $20,000 and his automobile and 1,100 shares of Miller Train Control stock; (2) To his son, Thomas M. Harrison, the sum of $10,000; and the residue of his estate

to his son Reuben N. Harrison; that George H. Harrison and his wife, Josephine, by deed dated December 29, 1931, conveyed to Thomas M. Harrison for a stated consideration of $10.00, and subject to the use and benefit of the grantor for the remainder of his life, a tract or parcel of land containing 189.15 acres, situated in Rockingham county. The bill then alleges that the conveyance of the land to Thomas M. Harrison was intended to be, and was, an advancement in satisfaction of the $10,000 legacy bequeathed to Thomas M. Harrison.

To this bill appellants filed their answer denying the averment that the conveyance of the real estate was an advancement in satisfaction of the legacy of $10,000, and alleged that the conveyance made by George H. Harrison was intended as a gift in addition to the legacy.

The cause was heard upon the bill, answer and depositions of witnesses, and on the 13th day of November, 1937, the chancellor decreed, "that the conveyance by George H. Harrison and his wife to Thomas M. Harrison by deed dated December 29, 1931, was an advancement by the said George H. Harrison to the said Thomas M. Harrison to the extent of the value of the land, to-wit: $9,500 as of March 6, 1932, * * * ." From that decree this appeal was allowed.

In Minor on Real Property (2d Ed.), section 934, we find this accepted definition of an advancement: "An advancement is a gift by a parent to a child or descendant, for the purpose of advancing him in life."

The answer to the question of whether or not the conveyance by the father to the son was an advancement or a gift is found in a proper construction of section 5237 of the Code of Virginia, which reads as follows: "A provision for or advancement to any person shall be deemed a satisfaction in whole or in part of a devise or bequest to such person, contained in a previous will, if it would be so deemed in case the devisee or legatee were the child of the testator; and whether he be a child or not, it shall be so deemed in all cases in which it shall appear from parol or other evidence to have been so intended."

It is the contention of appellees that at common law there was a presumption that the conveyance was intended as an ademption of the legacy denoted in the will of the father, and that the statute merely declares this rule and extends it. That contention is controverted by appellants, who insist that no such presumption exists in Virginia, and that the burden is upon appellees to show the intention of the father by a preponderance of the evidence.

Prior to the enactment of section 5237 in its present form, this court had, in several decisions, enunciated the rule applicable to the question involved.

In *Jones* v. *Mason*, 5 Rand. (26 Va.) 577, 16 Am. Dec. 761, Judge Carr quoted with approval Lord Eldon's statement in *Trimmer* v. *Bayne*, 7 Ves. 508. There we read: "The rule is settled, that where a parent or person *in loco parentis* gives a legacy as a portion, and afterwards, upon marriage or any other occasion calling for it, advances in the nature of a portion to this child, this will amount to an ademption of the gift by the will, and this court will presume he meant to satisfy one by the other."

In *Moore* v. *Hilton*, 12 Leigh (39 Va.) 1, Judge Tucker said: "Now, an advancement to a child, made subsequent to a will, is to be taken as a satisfaction *pro toto* or *pro tanto* according to its amount."

In the year 1841, this court handed down the decision in the notable case of *Hansbrough's Ex'rs* v. *Hooe*, 12 Leigh (39 Va.) 316, 37 Am. Dec. 659. Judge Cabell, delivering the opinion for the court, held that the rule is well settled that when a parent, or a person *in loco parentis*, gives a legacy as a portion, and afterwards, upon any occasion calling for it, advances in the nature of a portion to that child, that will amount to an ademption of the gift by the will and the presumption is that he meant to satisfy the one by the other. Following the decision in the *Hansbrough Case, supra*, came the revision of the Code in the year 1849. In dealing with the former provisions relative to advancements and satisfaction, the revisors proposed this section: "And no provision for, or advancement to, a child

or other person, hereafter made, shall be deemed a satisfaction in whole or in part of a devise or bequest to such child or other person, contained in a previous will, unless it plainly appears by a writing signed by the testator that it was so intended."

That the revisors sought to change the rule of presumption as it theretofore existed, is manifest when we read their report to the legislature. In the report, this is said: "The rule seems to be well established, that where a parent, or one standing *in loco parentis,* gives a legacy to a child, and afterwards makes a provision for or an advancement to the child, it shall be presumed that the subsequent provision or advancement was intended as a satisfaction of that made in the will. And in the case of *Hansbrough* v. *Hooe,* 12 Leigh (39 Va.) 316, 37 Am. Dec. 659, the Court of Appeals applied the same prescription to a devise of real estate. 'The ground of this doctrine seems to be, that every such legacy is to be presumed as intended by the testator to be a portion for the child or grandchild whether called so or not; and that afterwards, if he advances the same sum, upon the child's marriage or other occasion, he does it to accomplish his original object, as a portion.' 2 Story's Equity, sec. 1112. The application of this doctrine has been the fruitful source of perplexing litigation and has been the parent of strange results."

However, when the Code of 1849 was adopted by the legislature, the proposal of the revisors was rejected and section 12 of chapter 122, Title 33, was enacted. That section, unchanged, appears in the Codes of 1860, chapter 122, section 12, 1873, 1887, section 2522, and 1919, section 5237, and is now known as section 5237, Michie's Code.

Following the rejection by the legislature of the suggestion of the revisors that the rule be changed, this court, in *Watkins* v. *Young,* 31 Gratt. (72 Va.) 84; *Gregory* v. *Winston's Adm'r,* 23 Gratt. (64 Va.) 102; and *McDearman* v. *Hodnett,* 83 Va. 281, 2 S. E. 643, has held that whenever a father makes to a child a transfer of property, either real or personal, or whenever he furnishes the purchase

price of property, title to which is taken in the name of the child, a presumption of advancement arises. In commenting upon the common law presumption of advancements, Professor Minor has this to say: "Neither law nor good sense admits the supposition in general that a man designs to make a double provision for the same object, whether it be a child's portion or any other purpose distinctly ascertained. Hence, if a parent, or one standing *in loco parentis,* gives a legacy to a child (which is always *prima facie* supposed to be intended as a portion), and afterwards the testator makes provision for the same child by way of advancement in his lifetime, the legacy is for the most part adeemed. (Citations.) And this common law presumption, which in the case of a parent was natural, is now by statute extended as between all persons, whether children of the testator or not; and parol proof is admitted of the testator's intention to adeem or otherwise by the subsequent advancement. (V. C. 1873, ch. 118, sec. 12; V. C. 1887, ch. 112, sec. 2522.)" 111 Minor's Institutes, pp. 609, 610.

In 1 Wills and Administration, section 301, Judge Harrison, after noting that the legislature rejected the proposal of the revisors of the Code of 1849, to abolish the doctrine of presumed satisfaction, was of opinion that the legislature by enacting the statute extended the doctrine and made its application more definite.

██ Though we concede the force of the two Kentucky cases relied upon, yet, in our opinion, the contention of appellants is, under the authorities cited, untenable.

While we thus conclude that the doctrine of presumed satisfaction is applicable, there is no doubt that this presumed intention of satisfaction is, under the express terms of the statute, liable to be repelled by circumstantial evidence. *Rowe* v. *Rowe,* 144 Va. 816, 130 S. E. 771. It, therefore, becomes necessary to determine what effect is to be given to the proof adduced by the appellants.

In our opinion the learned trial court, in a written opinion, has correctly concluded that the proof upon the part of the

appellants does not meet the requirements of the law. In the opinion it is said:

"There is no evidence whatever of any declaration of intention by George H. Harrison as to the conveyance of this farm to his son. The deed is in form a deed of bar-gain and sale and contains nothing to reveal the intention with which it was made. Thomas Harrison does not tell what took place when this deed was executed and delivered, although he was present with his father at the time. His mother testified that at Mr. Harrison's request she wrote Thomas Harrison that his father wanted to talk to him about the Brock farm; that he came to see his father, but she did not hear their conversation. Mr. Bird, the cashier of the bank who had drafted Mr. Harrison's will, took the acknowledgment of the deed in Mr. Harrison's room. This is all that appears in the evidence upon that vital subject.

"*Trotman* v. *Trotman, supra* (148 Va. 860, 139 S. E. 490), cited by defendant for the similarity of its facts to this case, differs in this respect; it showed positive declaration of the intention.

"To rebut the presumption that this deed was intended to satisfy the legacy, the defendant relies entirely upon evidence of circumstances to prove the existence of a motive for a contrary intention.

"Summarized, the objectives of this evidence are to prove: That the affection between Thomas and his father was warmer than that felt for the other two sons; that William had demonstrated his business incapacity and Reuben was a hopeless invalid; that William and Reuben had received a large sum of money from their father and in addition, he had been obliged to spend much money for their benefit, but that Thomas had been paid nothing and little had been expended for him; that while the money received by William and Reuben was partly in payment for property inherited from their mother, yet they exacted more than their share and more than their property was worth, and that their father resented this hard bargain; that Thomas had served his father from boyhood, without any

regular compensation, and continued to assist him in business and had and deserved his father's complete confidence; and that Thomas was married and had a child, toward whom the grandfather showed marked affection, while William was childless and Reuben was unmarried.

"There is contradiction of this evidence in some particulars. The actions of George H. Harrison, after the payment to William and Reuben, do not indicate that he harbored any resentment toward them or that his affection for them had lessened. This is manifested by his two wills; in the first of which he bequeathed William $15,000 and requested Thomas and William to take care of Reuben; in the last, he made Reuben his residuary beneficiary. In addition to this, he paid William's debts. There is, also, convincing evidence of his father's continued solicitude and affection for Reuben.

"However, it cannot be gainsaid that this evidence discloses a situation which might well have moved George H. Harrison to give the farm to Thomas in addition to the legacy for him in the will. In seeking to discover the intention, this evidence has been carefully weighed. For, upon a question of intention, motive is an important inquiry. The motive, however, is not the object of the search. Moreover, motive is difficult to detect with certainty; often we know the intention without the motive.

"But the decisive factor in evaluating this evidence is the fact that with this situation known to him, George H. Harrison fixed the share of his son Thomas at $10,000. This he did in solemn and deliberate form, when, unknown to his family, he executed his last will and left it with his banker for safekeeping. There is no uncertainty as to what his intention was when that will was executed. Experience teaches us that men do not lightly change their minds upon such a matter, just as they have not lightly made them up upon it. Therefore the rule that the intention is presumed to continue unchanged, unless there is evidence to the contrary sufficient to convince us that it has been changed. While it is of course possible that George H. Harrison may

have changed his mind after his will was executed, moved by the circumstances brought out in this evidence, such a conclusion appears to be more uncertain than that his mind remained unchanged. We know, by the will, what his mind was under those same circumstances.

"Nor does the evidence show any change of circumstances, such that it might cause a change of intention, in the two years that elapsed between the making of the will and the execution of the deed. The only change of any moment in the affairs of George H. Harrison, during that period, was the liquidation of William's debts. He paid William out of debt and took over his property. Since the value of the property was less than the debts paid, this resulted in a reduction in the value of Mr. Harrison's estate. But it is evident that it was not reduced to the extent that it impaired the legacy of Thomas. The only effect it would have on the disposition made by the will would be to reduce Reuben's residuum. Thus, there is nothing apparent, in this incident, to cause George H. Harrison to change his mind as to the portion he had provided for Thomas in his will.

"To interpolate. It has been testified, and repeated in argument, that such was the value of George H. Harrison's estate at the time he made his last will, that the amount of the legacies given to Thomas and his mother showed that the testator intended them to have the entire estate; and that the residuary provision for Reuben, since there would have been little or no residuum after the payment of these legacies, was but a gesture of courtesy toward him. But this statement cannot be reconciled with the evidence, if comparison is made between the amount of the estate shown by the appraisement, and its value before it was reduced by the payment of William's debts.

"The rebuttal evidence, therefore, appears insufficient to overcome the presumption that it was George Harrison's intention to satisfy, by the conveyance, the legacy he had made for his son Thomas in the will. The *prima facie* case of the complainant has withstood the attack made

upon it by the defendants. It is the stronger upon the proof."

The decree of the lower court must be affirmed.

*Affirmed.*

HUDGINS, J., dissenting.

George H. Harrison, by will bearing date September 25, 1929, bequeathed to his son, Thomas M. Harrison, $10,000, and made other provisions for the benefit of his wife and another son. On December 3, 1931, George H. Harrison was conveyed a tract of 189.15 acres of land in part payment for sums paid the creditors of a third son, William M. Harrison. A few weeks later, to-wit; on December 29, 1931, George H. Harrison and wife conveyed, subject to a life estate, the same tract of land to Thomas M. Harrison for the alleged consideration of $10 "and other good, valuable and sufficient consideration passing from said party of the second part to said parties of the first part * * * ." On March 25, 1932, the will of George H. Harrison was duly probated and Thomas M. Harrison, the named executor, qualified and began to administer the estate.

The question is whether or not the conveyance of the 189.15 acres of land, made subsequent to the date of the will, was an ademption of the $10,000 bequest to Thomas M. Harrison contained in the testator's will.

It is conceded by all parties that this question is determined by the intention of the testator. It is also conceded that the record contains no direct evidence which proves this intention. It is further conceded that the record establishes strong reasons and compelling motives which very probably influenced the testator in desiring to give Thomas M. Harrison more consideration in the distribution of his property than his other sons.

The trial court was of opinion, which opinion is now approved by the majority of this court, that a mere gift *inter vivos* of real estate is sufficient proof of an intention to adeem a money bequest contained in a previous will of

the donor. This conclusion seems to be based mainly on the decision in *Hansbrough's Ex'rs* v. *Hooe*, 12 Leigh (39 Va.) 316, 37 Am. Dec. 659; the Report of the 1849 Code Revisors; and the Code of 1849, ch. 122, secs. 11 and 12.

In *Hansbrough's Ex'rs* v. *Hooe, supra,* it was held by a divided court that a devise of real estate and personal property was adeemed or satisfied by a subsequent settlement of other real estate and personal property on the beneficiary in the lifetime of the testator. The facts were that the testator had made ample provision in his will for one of his grandchildren, Maria Hansbrough. Immediately preceding the marriage of Maria Hansbrough, her fiancé requested the grandfather to make a settlement upon her. The grandfather at first refused, read his will to the proposed husband, and stated that that was ample provision for her. Later he reluctantly consented to give her certain real estate and personal property, and in a written statement, among other things, said: "All the property above mentioned shall be considered as settled on my said granddaughter for her use and the heirs of her body." The grandfather died, and Maria and her husband instituted a suit against the executors for the specific slaves and real estate devised her in the will which antedated the settlement. In deciding the case this was said: "Now, in the case before us, it is impossible to look at the facts, and not to see that the legacies and devises in the will were intended as a portion; and it is equally impossible not to see, that the provision by the advancement, on the marriage, was intended by Mr. Hansbrough to be in lieu of, and not in addition to, the provision made by the will."

It was also held that the grandfather stood *in loco parentis* to his granddaughter, Maria Hansbrough.

The Revisors in their report to the General Assembly of 1849 criticized the majority opinion on three grounds: (1) that the ademption in such cases discriminated against children; (2) that the question as to who stood *in loco parentis* had given rise to conflicts in the decisions of different courts; and (3) that the presumption, that every

gift made by a parent or one standing *in loco parentis* to a child should be construed as intended to be an ademption or satisfaction of a legacy for such child in a previous will, was unsound. In making this criticism, the Code Revisors said: "The rule seems to be well established, that where a parent, or one standing *in loco parentis,* gives a legacy to a child, and afterwards makes a provision for or an advancement to the child, it shall be presumed that the subsequent provision or advancement was intended as a satisfaction of that made in the will. And in the case of *Hansbrough's Ex'rs* v. *Hooe,* 12 Leigh (39 Va.) 316, 37 Am. Dec. 659, the court of appeals applied the same presumption to a devise of real estate. 'The ground of this doctrine seems to be, that every such legacy is to be presumed as intended by the testator to be *a portion* for the child or grandchild, whether called so or not; and that afterwards, if he advances the same sum, upon the child's marriage or other occasion, he does it to accomplish his original object, as a portion,' &c. 2 Story's Equity, sec. 1112. The application of this doctrine has been the fruitful source of perplexing litigation, and has been the parent of strange results. Thus, the presumption has not existence in the case of a legacy and subsequent advancement to a stranger, or any relative other than a child, or one to whom the testator stands *in loco parentis,* nor even to an illegitimate child, as to whom 'the consequence is that a natural child stands in a better situation than a legitimate child.' (Lord Eldon, 18 Ves. 147.) Besides, the rule opens the door to numerous enquiries and discussions as to the circumstances under which a person is to be considered as standing *'in loco parentis'* to the legatee, and to many distinctions and qualifications of the rule, as where the advancement is not equal in value to the legacy; where it is contingent and not certain; if it be *'ejusdem generis'*; or whether the advancement of a sum certain is to be presumed in satisfaction of the bequest of a residuum. (*Vid.* 2 Story Eq., sec. 1111, and cases cited in note; *Jones* v. *Mason,* 5 Rand. (26 Va.) 577, 16 Am. Dec. 761; *Hansbrough's Ex'rs* v. *Hooe,* 12 Leigh (39 Va.) 316,

37 Am. Dec. 659.) Moreover, this presumed intention to satisfy the legacy by a subsequent advancement, is always liable to be repelled or corroborated by parol proof. The obstacles and difficulties in the application of the rule might be submitted to and acquiesced in, if the wisdom and justice of the rule were free from doubt. But many of the English judges have expressed disapprobation of it.

"In *Debeze* v. *Mann,* Lord Thurlow says, that 'there was great hazard of defeating instead of satisfying the testator's intent.'—'I think more intentions are defeated than satisfied by it.' 2 Bro. C. C. 521. Lord Eldon (in *Ex parte Pye* and *Ex parte Dubert,* 18 Ves. 151) speaks of the rule as 'an artificial rule in which legitimate children have been very harshly treated, upon an artificial notion that the father is paying a debt of nature, and a sort of feeling upon what is called a leaning against double portions.' Mr. Story (2 Eq., sec. 1113) says the reasoning on which the rule is founded 'is extremely artificial, and such as an ingenuous mind may find extremely difficult to follow,' and that 'courts of equity make out this sort of doctrine, not upon any clear intention of the testator, any where expressed by him; but they first create the intention, and then make the parent suggest all the morals and equities of the case, upon their own artificial modes of reasoning, of which it is not too much to say, that scarcely any testator ever dreamed.' Sustained in our own impressions by these strong expressions of disapprobation of the rule by eminent jurists and chancellors, (notwithstanding the opinions of other learned judges to the contrary), we think it will be an improvement in the law, and cut off a source of expensive and embarrassing litigation, to abolish the rule. This we propose to do by this section. There is no difficulty in a testator designing to satisfy a devise or legacy by a provision or advancement in his lifetime, so to declare by a codicil or other writing."

The Code Revisors recommended that the General Assembly adopt a statute reading as follows:

"A will shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. And no provision for, or advancement to, a child or other person, hereafter made, shall be deemed a satisfaction in whole or in part of a devise or bequest to such child or other person, contained in a previous will, unless it plainly appear by a writing signed by the testator that it was so intended."

It is clearly seen from the last sentence of this contemplated statute that it was the purpose of the Revisors to confine the proof of a testator's intentions as to such gifts or advancements to a writing signed by him. The General Assembly was unwilling to go this far; however, it adopted, with some change in phraseology, the recommendations of the Revisors; that is, they made two sections of the proposed legislation (See Code of 1849, ch. 122, secs. 11 and 12) and provided that:

"Sec. 11. A Will shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will.

"Sec. 12. A provision for or advancement to any person shall be deemed a satisfaction in whole or in part of a devise or bequest to such person, contained in a previous will, if it would be so deemed in case the devisee or legatee were the child of the testator; and *whether he be a child or not, it shall be so deemed in all cases in which it shall appear from parol or other evidence, to have been so intended."* (Italics supplied.)

These provisions, without substantial change, are now Code, sections 5236 and 5237.

A careful analysis of section 12 shows that the discrimination against children was eliminated; that is, a child was put on the same basis as a stranger insofar as advancements or legacies are concerned; and, while the legislature

seemed to have been unwilling to confine the proof of a testator's intentions to a writing signed by the testator, the section did provide that intentions of such testator regarding such advancements should be proved by parol, or other evidence. To this extent the rule of presumption, which the courts had previously adopted in order to arrive at the intention of a testator, was eliminated. The legislature, as the courts had previously ruled, recognized the fact that the intention of the donor was the polar star by which to determine whether the donation or gift was an ademption or a satisfaction of the legacy. The courts had brought to their aid, in arriving at this intention, the rule of presumption. The legislature said that such gift or settlement should be deemed an ademption or satisfaction of the legacy or bequest only when it "appeared from parol or other evidence to have been so intended." We have been cited to no case in which this particular part of the statute has been construed, hence we are at liberty to view the statute uninfluenced by prior judicial construction.

In this case the testator disposed of all of his property by will. He subsequently acquired a tract of land, which he conveyed to the son who had remained with him and looked after his physical and financial needs. The testator conveyed the farm acquired after he had prepared his will and stated in the deed that he was conveying it for a "valuable and sufficient consideration" passing from the son to his father. This is not sufficient, without additional evidence, to prove to my mind that the testator intended the conveyance to be an ademption or satisfaction of the $10,000 bequeathed in the will.

For these and other reasons, I am constrained to dissent from the majority opinion.